Hillsborough,
No. 4315.

GUILBERT DESROCHERS & *a.* *v.* NEW YORK CASUALTY CO.

Argued June 1, 1954.

Decided June 23, 1954.

*Chretien, Bergevin & Chretien* (*Mr. Bergevin* orally), for the plaintiffs.

*Devine & Millimet* and *James B. Malley* (*Mr. Malley* orally), for the defendant.

DUNCAN, J. The rights and obligations of the parties depend primarily upon the terms of their agreement as expressed by the policy of insurance. The defendant's agreement was "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . because of injury to or destruction of property, including the loss of use thereof." The same language is used in the revised property damage provisions of a standard automobile liability policy, with the additional phrase "caused by accident and arising out of the ownership, maintenance or use of the automobile." See A. B. A. "Insurance Policy Annotations," August 1950 supplement, *p.* 21.

The defendant concedes its obligation to pay the damages awarded in the equity action but denies that it extends to compliance with the mandatory injunction or to payment of the expense which the insured may incur in complying therewith. The defendant is not a party to the equity action, nor is the injunction directed to it. Its obligation is governed by the contract of insurance. If the plaintiffs should arrange to have others do the work necessary for compliance with the injunction, the cost might be considered "sums which the insured shall become legally obligated to pay . . . because of injury to . . . property." But they would not be sums which they were thus obligated to pay "as damages" within the meaning of the defendant's primary undertaking. See *Lumbermen's &c. Co.* v. *McCarthy*, 90 N. H. 320, 323.

The cost of compliance with the mandatory injunction is not reasonably to be regarded as a sum payable "as damages." Damages are recompense for injuries sustained. See *Woodman* v. *Nottingham*, 49 N. H. 387, 391, 392; Restatement, Torts, *s.* 902. They are remedial rather than preventive, and in the usual sense are pecuniary in nature. 1 Sedgwick on Damages (9th *ed.*) *ss.* 2,

29. The expense of restoring the plaintiff's property to its former state will not remedy the injury previously done, nor will it be paid to the injured parties. Moreover, any sums which the plaintiffs may become obligated to pay on this account will arise from contract, and so will be a "liability assumed by the insured under . . . contract or agreement," which the policy expressly excludes from coverage.

Had the changes which injured the equity plaintiffs been of a permanent and irrevocable character such as to entitle them to damages measured by depreciation in the value of their properties, the defendant might well be obligated to satisfy such damages. *Troy* v. *Cheshire Railroad Co.*, 23 N. H. 83, 103, 104; *Harrisonville* v. *Dickey Clay Co.*, 289 U. S. 334, 340; See McCormick, Damages for Anticipated Injury to Land, 37 Harv. L. Rev. 574. But this is not such a case. The equity plaintiffs neither sought nor were awarded prospective damages, the extent of which was of doubtful certainty. See *Johnson* v. *Rouchleau-Ray Iron Land Co.*, 140 Minn. 289; 3 A. L. R. 679, and annotation following. The damages awarded, which the defendant is prepared to pay, were for injuries caused by a single prior flooding. The injunctive relief was to prevent recurrence of such injuries. For contingent and prospective damages the plaintiffs have incurred no liability. They are obligated to pay only for "the damage that has happened." *Troy* v. *Cheshire Railroad Co.*, supra, 102; *Skipwith* v. *Albemarle Soapstone Company*, 185 Fed. 15, 20; McCormick, supra, 581. Cf. *White* v. *Schnoebelen*, 91 N. H. 273, 276; Restatement, Torts, s. 930, comment on subsection (1).

In ruling that the "defendant is obligated to pay the reasonable costs of compliance with the mandatory injunction" the Trial Court made certain preliminary findings and rulings as follows: "It is the opinion of the Court that the affirmative relief was ordered either because damages would have been inadequate, or to avoid multiplicity of suits, or perhaps both. If ordered because damages were inadequate then the affirmative relief would be in lieu of future damages, and the reasonable expense of complying with the affirmative relief ordered should be borne by the insurance company, which would have been required to meet any monetary damages for which the affirmative relief was a substitute. If the affirmative relief was granted to avoid a multiplicity of suits, then these suits would simply be to recover future damages for which the company would be liable in spite of any subsequent cancella-

tion of the policy, since any future damages would result from the same wrongful act which occurred while the policy was in effect. Compliance with the affirmative order would relieve the company from liability to pay future damages." These findings and rulings were brought in question by the defendant's motion to set them aside, which was denied subject to exception.

The rulings were erroneous because pervaded by the erroneous premise that the defendant was obligated to indemnify the plaintiffs herein against any future damages which they might become obligated to pay by reason of later injuries. The defendant's policy was cancelled in accordance with its terms, effective November 10, 1952. The defendant's liability under it is limited to the payment of sums which the plaintiffs became legally obligated to pay while the policy was in effect. Although equity jurisdiction was exercised because damages at law would furnish inadequate relief (Pomeroy, Equity Jurisprudence, ss. 221a, 222), the relief granted by the mandatory injunction was not an alternative remedy in the sense that the plaintiffs in that case would have been entitled to damages if it had not been granted. Although damages might later result from the "same wrongful act which occurred while the policy was in effect," they could not come within the defendant's undertaking to pay because the plaintiffs were not legally obligated during that period to pay them. Consequently the affirmative relief could not be a "substitute" for any monetary damages for which the defendant was liable. As the authorities cited above show, no cause of action for anticipated injury arose because the injury had not occurred.

Furthermore the cost of removing the obstruction has no relation to the amount of damages which might result to adjoining premises if the obstruction should not be removed. In short, the expense of complying with the order is neither a sum which the insured is obligated to pay as damages, nor is it in any real sense equivalent thereto. No equitable principle requires the defendant to pay it, and it is not within the scope of its undertaking as a reasonable man in the position of the insured would interpret it. The exception to the denial of the motion to set aside these findings and rulings is sustained.

The ruling of the Trial Court that the defendant is not estopped to question coverage, because no prejudice resulted to the plaintiffs from its conduct of the equity litigation is fully sustained by the evidence and discloses no error of law. Under the policy the de-

fendant was obligated to "defend any suit against the insured alleging such injury . . . or destruction and seeking damages on account thereof." Its duty to defend was coextensive with its primary obligation to pay. *Lumbermen's &c. Co.* v. *McCarthy*, 90 N. H. 320, *supra*. Since the equity plaintiffs sought damages, the defendant was bound to undertake the defense of the action. It conducted the defense with due regard for the interests of the insured with respect to the injunctive relief sought, and declined to participate in a monetary settlement which would have discharged it without protecting the plaintiffs from future liability. Its conduct in so doing may not be used to estop it to deny the coverage claimed by the plaintiffs. *Putnam* v. *Corporation*, 90 N. H. 74. The plaintiffs were not excluded from participating in the defense. Notice of the limitations upon coverage was given to them before trial, and they were satisfied to rely upon insurance counsel. No inconsistency in the interests of the defendant and the plaintiffs arose until the decree was entered. The defendant was thereafter entitled to insist upon the limitations upon coverage which then became material because of the decree.

The ruling that the plaintiffs were not estopped to claim coverage because they insisted that the defendant should appeal the equity decree before it should be carried out likewise discloses no error. But since the defendant has satisfied its obligations under the policy by its deposit in court, a declaratory judgment should be entered in its favor.

*Judgment for the defendant.*

All concurred.