The AETNA CASUALTY and SURETY COMPANY, Appellant,

v.

F. H. HANNA and Margaret Hanna, his wife, Appellees.

No. 15249.

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Willis H. Flick, T. J. Blackwell, Miami, Fla., Blackwell, Walker & Gray, Miami, Fla., for appellant.

Ross Williams, R. K. Bell, Miami, Fla., for appellee.

Before TUTTLE, Circuit Judge, and DAWKINS and SIMPSON, District Judges.

SIMPSON, District Judge.

The appellant (hereinafter called Aetna) was the defendant below in an action brought by Dr. and Mrs. Hanna to recover damages under the terms of a "Comprehensive Personal Liability Policy," in the face amount of $10,000.00, issued by Aetna to the Hannas June 25, 1946.

The principal residence premises were stated in the policy to be 1299 Brickell Avenue, Miami, Florida, which the policy shows was also the location of the Doctor's office. The policy stated that in addition to all premises where the Insured or his spouse maintain a residence, the word "Premises" means ". * * * (4) vacant land, other than farm land, owned by or rented to an Insured, * * *".

The Hannas owned a vacant lot in Miami, which abutted Biscayne Bay. The lot, originally partly submerged, was filled in by Dr. Hanna with boulders, trash and dirt to an elevation several feet higher than adjoining property. During the life of the policy, in October, 1946, storms and high water undermined the retaining wall, and boulders, trash and other fill material was deposited on the adjoining property. This gave rise to extended litigation, which must be recounted here in some detail.

In March 1947, a suit for mandatory injunction was brought in the State Court, on the Chancery side of that Court, against the Hannas by the owners

of this adjoining property. The object of the suit was to compel the Hannas to remove the boulders and fill material from the adjacent property, to restrain further trespass, and to require the Hannas to construct and maintain a bulkhead to prevent future encroachment. No damages of any sort were sought by this suit. Upon being called upon by the Hannas to provide them with a defense to the suit, Aetna declined, advising the Hannas that the suit was not one within the policy coverage requiring it "to pay * * * damages", and that hence no obligation existed under the policy to provide a defense. The Hannas thereupon employed counsel and undertook their own defense.

On May 14, 1948, the Chancery Court entered its decree granting all the relief prayed. Pertinent provisions of this decree were:

"(4) That the portion of the fill constructed by defendants on their submerged lands, which has fallen or moved onto the submerged lands of the plaintiffs' submerged lands. That such encroachment and trespass results from the fact that the defendants' fill was not bulkheaded as required in such case by Section 309.01, F.S.A. and the plaintiffs as adjoining riparian owners are entitled to protection against the same under remedies as provided in such case in Section 371.01, F.S.A. [Apparently an erroneous citation to Section 271.01, F.S.A.].

"(5) That the defendants Fuad H. Hanna and Margaret Alice Hanna, his wife, their agents, servants and employees, be and they are hereby enjoined and restrained from continuing or permitting the continuance of the said encroachment on the plaintiffs' submerged lands in Biscayne Bay in front of and easterly from the plaintiffs' said lands and south of dividing line of the lands of the parties as projected out into the bay; and the said defendants are further enjoined and restrained from causing or permitting further or additional encroachment of their rock, debris or other fill material onto the said submerged lands of the plaintiffs.

"(6) It is recognized by this Court that this injunction restraining further encroachment and restraining continuance of the present encroachment cannot be complied with by defendants without removing from plaintiffs' submerged lands the rocks and other fill which constitute the present encroachment, and, as to future encroachment, without building a bulkhead or other effective restraining wall along the projected dividing line between the lands of the parties; and if the material causing the present encroachment on plaintiffs' submerged lands is not removed and a bulkhead or other adequate restraining wall to protect against future encroachments is not constructed along said dividing line, all within 90 days from the date of this decree, the failure of the defendants to do so will constitute a violation of this injunction by which defendants may be made liable for damages to the plaintiffs; and this Court reserves jurisdiction, in that event to determine the liability and the amount of damages and to award such damages to the plaintiffs, or, if upon application by plaintiffs for a determination of damages, defendants shall indicate a desire for jury trial on the matter of damages and to award such damages to the plaintiffs, or if upon application by plaintiffs for a determination of damages, defendants shall indicate a desire for jury trial on the matter of damages, then to transfer it to the law side of the Court for a jury's determination of such question of such damages."

This decree was appealed, and was in all respects affirmed by the Supreme Court of Florida on November 30, 1948, in Hanna v. Martin, 160 Fla. 967, 37 So.2d 579.

Throughout this litigation to this point, relief by injunction, and not money damages, was sought by the Martins (plaintiffs in the State Court suit).

On April 1, 1949, since the Hannas had not complied with the injunction, upon motion of the Martins, the case was transferred to the law side of the Court for assessment of damages for non-compliance (as provided in Paragraph (6) of the decree, supra). A jury trial resulted in a $15,000.00 verdict and judgment for the Martins and against the Hannas. The day following the verdict, the Hannas' counsel notified Aetna that the action had been transferred to the law side of the Court and of the resulting verdict. This $15,000.00 judgment was appealed to the Supreme Court of Florida, which, in December, 1950, in Hanna v. Martin, 49 So.2d 585, reversed because the wrong measure of damages was applied in the lower court.

In February, 1951, the application for determination of damages was withdrawn by the Martins, and on their motion the case was returned to the Chancery side. There, in September, 1951, the Hannas were adjudged in contempt of Court for failure to comply with the injunctive decree, but no punishment was imposed, the Hannas representing that compliance was at last underway. In April, 1952, the Martins again applied for a determination of damages for noncompliance with the injunction. This application was refused by the State Court on the ground that the Hannas had by then complied with the decree, and that damages were recoverable only as a substitute for noncompliance.

Very fittingly, the Chancellor entitled this order "Final Order", and concluded it as follows: "It is intended that by this order this prolonged and troublesome litigation shall end. Jurisdiction is not reserved or retained for any purpose."

To recover the costs and expenses incident to all this State Court litigation, including attorneys' fees incurred therein, and the $2,000.00 expense of complying with the mandatory injunction, the Hannas instituted this suit in the District Court. It is appropriate here to quote the pertinent policy provisions:

"I. Coverage A—Liability:

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or the liability of others assumed by him under written contract relating to the Premises, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, and for damages because of injury to or destruction of property, including the loss of use thereof.

"II. Defense; Settlement; Supplementary Payments:

"As respects such insurance as is afforded by the other terms of this Policy under Coverage A the Company shall

"(a) defend in his name and behalf any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation negotiation and settlement of any claim or suit as may be deemed expedient by the Company."

The case was tried by the Court, in the absence of a jury. From a Final Judgment for the Hannas awarding damages for these items in the amount of $6,872.75, Aetna took this appeal. The judgment is based on Findings of Fact and Conclusions of Law filed by the trial Judge, which are bottomed upon the following Conclusion of Law:

"1. The occurrence of an injury causing destruction to property rights of another creating an obligation by law to compensate therefor determines the liability of an insurer thereof, rather than the elec-

tion of remedies pursued by the party injured; and the injury in this case suffered by the adjoining lot owners was covered by the provisions of the policy issued by the defendant to the plaintiffs."

For reasons we will attempt to set forth, we entirely disagree.

■■ An insuring obligation is a contract, and coverage exists only if assumed by the terms of the policy.[1] To determine the question of coverage and duty to defend, we should look to the policy to see if coverage is provided against mandatory injunctive orders. We conclude: that it is not; that to so construe the policy is to do violence to its plain and unambiguous provisions, and to wholly ignore large portions of the context in which words are used.

Insofar as coverage is concerned, the obligation is solely "to pay," not to remove fill dirt, rocks and boulders, under Court order or otherwise. It is equally unreasonable to view the obligation as providing reimbursement to the Insured, for the undertaking is to pay "on behalf of" the Insured whatever he "shall become obligated to pay by reason of the liability imposed upon him by law * * * for damages because of injury to or destruction of property, * * * ".

Clearly, the policy covers only payments to third persons when those persons have a legal claim for damages against the Insured on account of injury to or destruction of property. The obligation of the insurer to pay is limited to "damages", a word which has an accepted technical meaning in law. Black's Law Dictionary (3d Ed.) p. 499 defines damages as:

"A pecuniary compensation or indemnity which may be recovered in the courts by any person who has suffered loss, detriment or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another"

This is a far cry from the cost to unsuccessful litigants of complying with an injunctive decree. It is equally a far cry from the expenses incurred by those litigants in resisting a Chancery suit seeking such a decree.

■ Again, in Florida, as in most common law states, the measure of damages in an action for trespass to lands, (or trespass quare clausum fregit, as the old form of action was called) is the difference in value of the lands before and after the trespass.[2] So, if the Martins had elected to sue Dr. and Mrs. Hanna at law, for damages, giving rise under the policy coverage to an obligation by Aetna to pay (and hence to defend), this would have been the measure of damages applied, not the cost of removing the rocks and other fill materials, and building a bulkhead. The complete dissimilarity is obvious. Indeed, for aught that appears in this record, the Martin lands may have been more, rather than less, valuable after the accretion of materials from Dr. Hanna's lot. In this case, the Martins, of course, would have been denied any damages other than nominal.

It need hardly be pointed out that under the quoted policy provisions the obligation to defend is limited by, and coextensive with, the obligation to pay. The obligation here is to "defend in his name and behalf any suit against the Insured alleging such injury, * * * and seeking damages on account thereof, * * * ". Therefore, it may not be successfully contended that the costs incurred in defending the Chancery suit are recoverable even though the costs and expense of complying with the injunction are not.

Appellant has cited to us a well-reasoned case recently decided by the Supreme Court of New Hampshire, Desrochers v. New York Casualty Co., 99 N. H. 129, 106 A.2d 196. It is on all fours with the case at bar, and the policy pro-

1. Brock v. Hardie, 114 Fla. 670, 154 So. 690; C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 101 F.2d 739.

2. Gasque v. Ball, 65 Fla. 383, 62 So. 215; Hutchinson v. Courtney, 86 Fla. 556, 98 So. 582.

visions, insofar as quoted, are identical. In the interest of space, we do not quote Desrochers, but we cite with approval its reasoning and the result reached.

One additional matter requires comment. When the Martins' suit against the Hannas was transferred to the law side for ascertainment of damages, as pointed out earlier in this opinion, no notice thereof was given to Aetna until after verdict and judgment.

■ We conclude, first, that no obligation to defend ever existed, since the refusal to comply with the injunction was an intentional act, and the damages sought were expressly for failure to comply. Intentional injury was excluded by the terms of the policy, in this language:

"Exclusions

"This policy does not apply:

"(c) to injury, sickness, disease, death or destruction caused intentionally by or at the direction of the Insured".

■ We conclude, further, that if the policy provisions conceivably are broad enough to cover a defense of this action, the failure to notify Aetna when the case was transferred to the law side, and the Hannas' defense of the action on the law side on their own initiative, clearly breached the notice and cooperation provisions of the policy. In this respect, the policy provided:

"3. Notice of Claim or Suit
Coverage A

"If *claim* is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every *demand, notice,* summons or other process received by him or his representative.

"4. Assistance and Cooperation of the Insured   Coverage A.

"The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. *The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense* other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident." (Emphasis supplied.)

No waiver or condonation of this breach appears from the record.

For either, or both, of the two reasons given, it is clear that as to the portion of the Hannas' recovery based upon the costs and expenses incurred in litigating this phase of the State Court suit, no differentiation should be made. The Hannas are no better off as to this portion than as to the balance of their judgment.

This, then is to say that no part of the Hannas' recovery under the judgment below may be permitted to stand. The judgment of the trial Court is reversed and remanded, with directions to dismiss plaintiffs'-appellees' suit, and to enter Final Judgment for the defendant-appellant, Aetna.

Reversed.