292 So.2d 75 (1974)
The GARDEN SANCTUARY, INC., a Florida Corporation, Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, a Foreign Corporation, Appellee.
No. 73-180.
District Court of Appeal of Florida, Second District.
March 27, 1974.
*76 Herb Blessing, Bradenton, for appellant.
A.C. Shields, III, Sarasota, for appellee.
GRIMES, Judge.
This is a case involving the construction of the liability portion of an insurance policy issued by appellee to appellant, the operator of a cemetery.
Appellant was sued in a class action by the next of kin of persons buried in a portion of the cemetery. The complaint alleged that appellant had caused bulldozing, earth moving and clearing operations to be performed in an area of the cemetery where their decedents were interred. As a result, it was alleged that the area was demolished, headstones and grave markers were damaged and moved, shrubbery was uprooted and the location of grave sites became impossible to determine.
The complaint was in four counts:
Count I prayed for an injunction prohibiting further disturbance of the burial grounds;
Count II prayed for a mandatory injunction requiring the reconstruction and restoration of the area to its natural state;
Count III prayed for compensatory and punitive damages based on mental anguish; and
Count IV prayed generally for damages and injunctive relief.
Upon being notified of the suit, appellee allegedly advised appellant that there was no coverage in the policy under Counts I and II of the complaint and refused to defend with respect to those counts. Appellant retained separate counsel and ultimately settled the matters raised in Counts I and II through a court approved agreement to restore a portion of the cemetery and to maintain it perpetually.
Thereafter, appellant sued appellee for breach of contract based upon the denial of coverage as to Counts I and II and its refusal to defend those counts. Appellee's motion to dismiss was granted and the court entered an order dismissing the complaint with prejudice. Appellant appeals this order.
There are two insuring clauses in the policy. The first provides that the insurer agrees to "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages" because of personal injury or property damage. The second states that the insurer agrees to "pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of liability imposed on it by law for damages" because of mental anguish or property damage.
Appellant argues that since it has a legal obligation to pay money to restore and to maintain the cemetery, this is the equivalent to being liable for damages arising out of acts admittedly covered by the policy.
There appear to be only two reported cases in the annals of American jurisprudence where this issue of coverage has been squarely presented. In Aetna Casualty and Surety Company v. Hanna, C.A. 5th, 1955, 224 F.2d 499, Dr. Hanna, the insured under a comprehensive personal liability policy, was compelled by way of mandatory injunction to remove certain boulders and fill material from adjacent property. Damages resulting from the insured's action would have been within the coverage of the policy. However, no damages were sought in or obtained by the suit. The insured sued Aetna for the expense of complying with the mandatory injunction and for failure to defend the suit.
In reversing a judgment entered in favor of the insured, the Court of Appeals said:
"Insofar as coverage is concerned, the obligation is solely `to pay,' not to remove *77 fill dirt, rocks and boulders, under Court order or otherwise. It is equally unreasonable to view the obligation as providing reimbursement to the Insured, for the undertaking is to pay `on behalf of' the Insured whatever he `shall become obligated to pay by reason of the liability imposed upon him by law * * * for damages because of injury to or destruction of property, * * *'.
Clearly, the policy covers only payments to third persons when those persons have a legal claim for damages against the Insured on account of injury to or destruction of property. The obligation of the insurer to pay is limited to `damages', a word which has an accepted technical meaning in law. Black's Law Dictionary (3d Ed.) p. 499 defines damages as:
`A pecuniary compensation or indemnity which may be recovered in the courts, by any person who has suffered loss, detriment or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another'
This is a far cry from the cost to unsucessful litigants of complying with an injunctive decree. It is equally a far cry from the expenses incurred by those litigants in resisting a Chancery suit seeking such a decree.
... So, if the Martins had elected to sue Dr. and Mrs. Hanna at law, for damages, giving rise under the policy coverage to an obligation by Aetna to pay (and hence to defend), this would have been the measure of damages applied, not the cost of removing the rocks and other fill materials, and building a bulkhead. The complete dissimilarity is obvious. Indeed, for aught that appears in this record, the Martin lands may have been more, rather than less, valuable after the accretion of materials from Dr. Hanna's lot. In this case, the Martins, of course, would have been denied any damages other than nominal."
The Supreme Court of New Hampshire in Desrochers v. New York Cas. Co., 1954, 99 N.H. 129, 106 A.2d 196, reached the same conclusion. There, the court said:
"The cost of compliance with the mandatory injunction is not reasonably to be regarded as a sum payable `as damages.' Damages are recompense for injuries sustained. See Woodman v. Town of Nottingham, 49 N.H. 387, 391-392; Restatement, Torts, § 902. They are remedial rather than preventive, and in the usual sense are pecuniary in nature. 1 Sedgwick on Damages (9th ed.) §§ 2, 29. The expense of restoring the plaintiff's property to its former state will not remedy the injury previously done, nor will it be paid to the injured parties... ."
We are persuaded by the reasoning in these decisions that the court below correctly held that there was no coverage under the policy for the relief sought under Count I and Count II of the complaint.
This does not necessarily dispose of the question whether appellee had an obligation to defend these counts. It has often been said that the insurer's duty to defend is more extensive than its duty to pay. 1 Long, The Law of Liability Insurance, Sec. 5.02. In Hanna no claims within the coverage of the policy were made against the insured so that case is not authority for the proposition that appellee had no duty to defend Counts I and II. While in Desrochers the suit included claims for damages as well as for injunctive relief, the insurance company apparently chose to defend the entire suit so the question was never raised.
The allegations in the complaint determine the insurer's duty to defend. Bennett v. Fidelity & Casualty Company of New York, Fla.App.1st, 1961, 132 So.2d 788. Admittedly, Counts III and IV were within the coverage of appellant's policy. Most courts agree that the mere fact that the complaint includes allegations outside the scope of the coverage does not provide the *78 insurer an excuse not to defend the suit at all. See Couch on Insurance, Sec. 51:43; 41 A.L.R.2d 434. It is somewhat less clear that an insurer is required to defend against those allegations beyond the scope of the coverage.
Nevertheless, where a complaint alleges facts partially within and partially without the coverage, the courts have, more often than not, required the insurer to defend the entire suit. See 50 A.L.R.2d 458, 506. With respect to alternative pleadings of a single factual occurrence, only one of which presents coverage under the policy, Judge Learned Hand said in Lee v. Aetna Casualty & Surety Co., C.A.2nd, 1949, 178 F.2d 750:
"`... any complaint, though its language may cover two or more events, is meant to advise the defendant of only one event, unless two separate events create separate liabilities. The "intended" event is that on which the injured party means to rely; and, although he has not made it plain whether it is within the class of events covered by the policy, it either is or is not within that class. His allegation leaves its membership in that class open, but the class of the event he is talking about is definitely fixed. Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured.'"
See also Home Insurance Company v. Pinski Brothers, Inc., Mont. 1972, 500 P.2d 945; Hogan v. Midland National Insurance Company, 1970, 3 Cal.3d 553, 91 Cal. Rptr. 153, 476 P.2d 825; Babcock & Wilcox Company v. Parsons Corporation, C.A. 8th, 1970, 430 F.2d 531; cf. Doyle v. Allstate Insurance Company, 1956, 1 N.Y.2d 439, 154 N.Y.S.2d 10, 136 N.E.2d 484; contra, Waite v. Aetna Casualty and Surety Company, 1970, 77 Wash.2d 850, 467 P.2d 847.
Our sister court appears to have reached the same conclusion in the cases of St. Paul Fire & Marine Insurance Co. v. Hodor, Fla.App.3d, 1967, 200 So.2d 205, and Town and Beach Plumbing Co. v. American Fire and Casualty Company, Fla.App. 3d, 1963, 157 So.2d 700.
The language of the insurance policy does nothing to strengthen appellee's position because it provides that the company shall "defend any suit" against the insured alleging an injury and seeking damages within the scope of the coverage even if the suit is groundless, false or fraudulent. The policy does not limit the company's obligation to defend only that portion of a suit alleging matters within the coverage of the policy.
We, therefore, hold that where a complaint against an insured contains allegations which are partially within and partially without the scope of the insured's coverage, the carrier must defend against even those portions of the complaint outside the coverage. In so defending that portion of the suit outside the coverage, the insurance company will not be precluded or estopped from declining to pay that portion of the judgment which is outside the coverage.[1]
Accordingly, the order is affirmed in part and reversed in part. The case is hereby remanded for further proceedings consistent herewith. In the event appellant sustains the allegations of its complaint with respect to appellee's refusal to defend Counts I and II, the lower court should determine the amount of reasonable attorneys' fees for which the appellant shall be reimbursed for appellee's refusal to defend, together with reasonable attorneys' fees for prosecuting that portion of this suit which relates to the duty to defend.
MANN, C.J., and SCHWARTZ, ALAN R., Associate Judge, concur.
NOTES
[1] A prudent insurer would be well advised to notify its insured at the earliest opportunity that while the company will defend the entire suit, it reserves the right to decline to pay that portion of any judgment which is not within the coverage of the policy.