LADD CONSTRUCTION COMPANY, Plaintiff-Appellant, *v.* INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.

Third District   No. 78-317

Opinion filed June 19, 1979.

Louis J. Perona, of Perona and Perona, of Spring Valley, for appellant.

Robert T. Park, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Bureau County which dismissed the complaint of the plaintiff, Ladd Construction Company. The dismissed complaint had sought damages from the defendant, Insurance Company of North America, on the grounds that it had wrongfully refused to defend the plaintiff under the terms of a general liability policy.

The plaintiff construction company owned real property in the village of Ladd in Bureau County. Located on this property was a conical-shaped slag or gob pile, being approximately 100 feet high, 1,000 feet long and 700 feet in width. A "gob" or "slag" pile consists of the residue which remains or is discarded after mined coal has been processed. A predecessor in title to the plaintiff had operated a coal mine and had created the gob pile. Tracks of the Burlington Northern Inc., a railway company, were located adjacent to the gob pile and in 1972, and for a time thereafter the slag pile began to collapse and slide so as to cover and block a portion of Burlington's tracks. The sliding and collapsing occurred after the plaintiff, Ladd Construction Company, undertook to remove a portion of the gob pile so as to create a level area.

Burlington Northern, Inc., brought suit in equity against Ladd Construction Company, praying for relief as follows:

"13. Wherefore, the plaintiff prays that this Court will issue its mandatory writ of injunction directing the defendant, within a short day to be fixed by the Court:

(a) To remove all the debris from its gob pile which encroaches on the plaintiff's right of way; and

(b) To remove sufficient additional material from the gob pile itself so that what is left will remain in place without further collapse or slide.

14. The plaintiff asks for such other and further relief as equity and good conscience require."

The insurance policy purchased by the plaintiff, Ladd Construction Company, from defendant, Insurance Company of North America, was known as a "multiple liability insurance policy" and was in effect at all times pertinent to this litigation. The policy provided in part:

"The company will pay on behalf of the insured all sums which the insured shall become legally liable to pay as damages because of

a. Bodily Injury or

b. Property Damage

to which this insurance applies, caused by an occurrence and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage * * *."

After being sued by Burlington, the plaintiff, Ladd Construction Company, requested that the defendant, Insurance Company of North America, undertake the defense of the plaintiff pursuant to the terms of the aforementioned contract of insurance. The defendant refused to defend on the grounds that "there had been no occurrence within the definition of that term * * *" and "* * * there has been no property damage to the plaintiff's property within the definition of that term * * *." The plaintiff employed private counsel who negotiated a monetary settlement with Burlington and thereafter, as previously stated, the plaintiff instituted the litigation from which this appeal ensued.

The first issue presented for review is whether the defendant insurance company had an obligation to defend a Federal court suit filed against the plaintiff.

■■ We agree with the plaintiff that in Illinois a liability insurer is obligated to defend a suit if the complaint alleges facts which bring the claim potentially within the coverage of the policy. (*Midwest Contract Equipment Co. v. Bituminous Casualty Corp.* (1969), 112 Ill. App. 2d 134, 251 N.E.2d 349.) A refinement of the heretofore stated issue is whether the complaint in the Burlington law suit against the plaintiff prayed for relief which might bring the claim within the policy coverage. In examining the policy of insurance in question it is clear that the defendant was required to defend any suit against the insured seeking damages on account of bodily injury or property damage. Turning to Burlington's complaint against the plaintiff, an examination of the same discloses that no bodily injury was alleged, nor in this court's opinion were there any allegations as to property damage which would bring it within the purview of the terms of the insurance policy. As interpreted we fail to find any allegation by Burlington as to actual or direct damages to property, but instead Burlington sets forth allegations which would sustain a claim that it had suffered economic damages from loss of the use of its railroad tracks. Burlington's complaint did not seek monetary damages, but instead equitable relief in the form of a mandatory injunction which would require or command the plaintiff, Ladd Construction Company, to remove debris from its gob pile which had slid or collapsed on the railroad's tracks. Prior to making this prayer for relief the complaint of Burlington, after alleging the collapse of the gob pile, referred to it as a "public and private nuisance" and described its remedy at law inadequate because:

"(a) the trespass is continuing and increasing in quantity each day;
(b) the ability of the respondent to respond in damages is uncertain;

(c) although often asked, the defendant has steadfastly refused to remove its debris from the plaintiff's property; and (d) because it would require a multiplicity of actions at law to give plaintiff complete relief."

The above allegations contained in Burlington's complaint establish the need for equitable relief in the form of an injunction and specifically list reasons which serve to negate a prayer for relief in the form of money damages.

No Illinois case has specifically dealt with the duty of an insurer to defend a suit for injunction, however, this question has been presented to and determined by courts of other States and by our Federal courts.

A case with a factual situation strikingly similar to that in the instant case is *Aetna Casualty & Surety Co. v. Hanna* (5th Cir. 1955), 224 F.2d 499. In *Aetna* an action was brought against an insured by the owner of adjoining land who sought a mandatory injunction to compel the insured to remove from the adjoining owner's land trash and other fill material which had been washed thereon from the insured's land, and to build a restraining wall to prevent further encroachment. In *Aetna* no money damages were sought from the insured by the adjoining landowner. In *Aetna* the insurance policy in question required the company to defend the insured in any suit alleging injury, sickness, disease, or destruction and seeking damages on account thereof.

In *Aetna* the United States Court of Appeals (Fifth Circuit, Florida) held that the insurer was not required to defend a suit seeking equitable relief. The reasoning contained in the reviewing court's opinion in *Aetna* is so well formulated that we set forth the same at some length:

"An insuring obligation is a contract, and coverage exists only if assumed by the terms of the policy. To determine the question of coverage and duty to defend, we should look to the policy to see if coverage is provided against mandatory injunctive orders. We conclude: that it is not; that to so construe the policy is to do violence to its plain and unambiguous provisions, and to wholly ignore large portions of the context in which words are used.

Insofar as coverage is concerned, the obligation is solely 'to pay,' not to remove fill dirt, rocks and boulders, under Court order or otherwise. It is equally unreasonable to view the obligation as providing reimbursement to the Insured, for the undertaking is to pay 'on behalf of' the Insured whatever he 'shall become obligated to pay by reason of the liability imposed upon him by law * * * for damages because of injury to or destruction of property, * * *'.

Clearly, the policy covers only payments to third persons when those persons have a legal claim for damages against the Insured on account of injury to or destruction of property. The obligation of the

insurer to pay is limited to 'damages', a word which has an accepted technical meaning in law. Black's Law Dictionary (3d Ed.) p. 499 defines damages as:

'A pecuniary compensation or indemnity which may be recovered in the courts by any person who has suffered loss, detriment or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another.'

This is a far cry from the cost to unsuccessful litigants of complying with an injunctive decree. It is equally a far cry from the expenses incurred by those litigants in resisting a Chancery suit seeking such a decree." 224 F.2d 499, 503.

The opinion in *Desrochers v. New York Casualty Co.* (1954), 99 N.H. 129, 106 A.2d 196, also supports the decision reached by the trial court in the instant case. We find the following language in the *Desrochers* opinion to be pertinent to a determination of this appeal:

"The cost of compliance with the mandatory injunction is not reasonably to be regarded as a sum payable 'as damages.' Damages are recompensed for injuries sustained. [Citations.] They are remedial rather than preventive, and in the usual sense are pecuniary in nature. [Citation.] The expense of restoring the plaintiff's property to its former state will not remedy the injury previously done, nor will it be paid to the injured parties." 99 N.H. 129, 131-32, 106 A.2d 196, 198.

■■ ■ The above quoted reasoning set forth by the New Hampshire Supreme Court is equally applicable to the factual situation and question presented in this appeal. While decisions from the circuit courts of appeal and reviewing courts from other States are not precedentially binding on this court, however, in view of the close factual similarity in *Aetna* and *Desrochers* to the factual situation in the instant case we find the decision and opinion in these cases to be highly persuasive. We believe that the better and preferential law on the question as to whether the defendant insurance company had a duty to defend the plaintiff construction company is set forth in the cases of *Aetna* and *Desrochers*. This conclusion is reached with full cognizance of the case of *Doyle v. Allstate Insurance Co.* (1956), 1 N.Y.2d 439, 154 N.Y.S. 2d 10, 136 N.E.2d 484 (lower court opinion at 1 App. Div. 2d 738, 147 N.Y.S.2d 200), which reached a contrary conclusion. During oral argument in this appeal the case of *Thomas v. Appalachian Insurance Co.* (La. App. 1976), 335 So.2d 789, was cited by the plaintiff as authority for its argument that the defendant in the instant case had a duty to defend. In *Thomas* the reviewing court held that an insurer had a duty to defend a suit in Federal court seeking only punitive damages even though the insurance policy in question specifically excluded

payment of punitive damages. The Louisiana court in so holding stated: "Although plaintiff prayed for punitive damages only, the federal district court is not restricted to such an award. The plaintiff may be granted any relief the court believes he is entitled to, even if he has not demanded such relief in his pleading. [Citations.] Plaintiff's petition contains allegations, which if proven, would amply support the federal courts granting of compensatory damages." 335 So. 2d 789, 792.

The reasoning in the *Thomas* case is not persuasive as to the determination of the question as to the duty to defend in the instant case because the complaint of Burlington against the Ladd Construction Company did not contain any allegations which if proven would establish a right to damages because of "personal injury or property damage" which is the relevant coverage contained in Insurance Company of North America's policy. The converse is true in that Burlington's complaint alleged damage for trespass and its resultant loss of use of its railroad tracks. The complaint of Burlington was barren of any allegations or prayers for relief which would support an award of damages. Unlike the case of *Thomas* the Federal court would not have been authorized to award damages for property damage and hence the insurance company had no corresponding duty to defend the construction company in the Federal court. A Federal court may well have inherent power to award money damages in lieu of equitable relief or in addition thereto. It would be most unreasonable to speculate or assume that the Federal court would award monetary damages to Burlington and especially so in view of the fact that none were prayed for, and in addition Burlington's complaint contained specific allegations negating the effectiveness or desirability of the same. Should we indulge in speculation as to whether a court by exercising its inherent power might award damages when none were sought and then conclude that such inherent power exists and insurance company must defend an action, then we would by speculation be altering the responsibilities between parties as set forth in an insurance contract. Moreover, a giant if not final step would have been taken in support of a proposition that an insurance company would be under an obligation to defend all suits, regardless of policy provisions or allegations contained in a complaint. Such a result could well create havoc as to both the insurers and the insureds.

For the reasons set forth the defendant Insurance Company of North America had no duty to defend a Federal court action against the plaintiff Ladd Construction Company.

The plaintiff also argues that because the defendant initially refused to defend on the grounds that no "occurrence" had taken place within the policy definition of that term and that no "property damage" had occurred

within the definition of that term, the defendant was thereafter estopped from raising an additional reason for not defending, that issue being that the policy did not cover a suit in equity.

■ The doctrine of equitable estoppel in Illinois is defined as follows:

> "Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in chancery, from asserting rights which might otherwise have existed as against another person who has, in good faith, relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." 18 Ill. L. & Prac. *Estoppel* §22, at 79 (1956); *Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 243 N.E.2d 723; and *Lincoln-Way Community High School District 210 v. Village of Frankfort* (1977), 51 Ill. App. 3d 602, 367 N.E.2d 318.

The function and the purpose of the doctrine of equitable estoppel are the prevention of fraud and injustice. There can be no estoppel where there is no loss, injury, damage, detriment or prejudice to the party claiming it. The injury or prejudice must be material or substantial and not merely technical. See 28 Am. Jur. 2d *Estoppel & Waiver* §78, at 715-16 (1966).

In the case of *DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 351 N.E.2d 302, 309, the reviewing court in addressing itself to the doctrine of estoppel set forth the following observation which we deem pertinent:

> "Not only is it essential that the party claiming the benefit of the estoppel doctrine had acted in good faith, but *it is further required that he would not have so acted but for the conduct or representations of the other party* and that he had no knowledge or convenient means of ascertaining the true facts which would have prompted him to react otherwise. [Citation.]" (Emphasis added.)

From the complaint of the plaintiff Ladd Construction Company it is impossible to glean facts showing action on the part of the defendant insurance company which would support a conclusionary allegation that the plaintiff was misled to its detriment.

The defendant's denial of coverage in the first instance on the grounds that there had been no "occurrence" and no "property damage" under the policy definition of these terms is not inconsistent with the later denial of coverage grounded on the assertion that the policy did not cover a suit in equity, to the extent that it can be found that the plaintiff was misled to its detriment. The defendant has at all times denied coverage based on the interpretation of the policy and has at no time claimed any action of the plaintiff as being the basis for nonliability.

An insurance company is not required to raise all possible defenses in its letter to the insured. Failure to raise all defenses does not result in a per se

waiver of the same. *Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 373 N.E.2d 492.

■■ We cannot agree that the doctrine of equitable estoppel is applicable in the instant case.

■■ The plaintiff also argues that words used in an insurance policy should be interpreted in light of their plain, ordinary and popular meaning as understood by inexpert lay persons. We quarrel not with this assertion; however, we cannot agree with the plaintiff that words and phrases such as "in law," "in equity," and "legally," and "damages" are so confusing and ultra-technical as to defy understanding and interpretation by those who have need for policies of insurance such as the one issued in the instant case. There is no claim by the plaintiff that the policy was worded or so phrased as to be different from a standard and normally issued policy. This issue raised by the plaintiff was not strongly argued before this court and rightfully so, for this court should not attempt to rewrite a standard policy of insurance so as to provide coverage for which the parties never contracted.

While this appeal was pending the defendant insurance company filed a motion to supplement the record by adding four pages of the insurance policy which the plaintiff failed to include in the policy of insurance alleged to have been attached to its complaint. The plaintiff objected to this motion, and this court ordered the motion and objection thereto to be taken with this appeal. For reasons stated by the plaintiff and which are not pertinent to this appeal the motion of the defendant to supplement the record is and should be denied. In determining the issues presented in this appeal, this court has not considered any documents or arguments based on them which were in any way related to the motion to supplement the record.

For the reasons set forth the order of the trial court dismissing plaintiff's original and amended complaints is affirmed.

Affirmed.

ALLOY and STENGEL, JJ., concur.