568 A.2d 1129

## MARYLAND CUP CORPORATION

v.

## EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, et al.

No. 554, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Feb. 2, 1990.

Stanley B. Rohd and Leslie L. Russo (Weinberg and Green, on the brief), Baltimore, for appellant.

Alva P. Weaver, III (Donna M. Larkin and Weaver, Bendos and Bennett, on the brief), Baltimore for appellees, U.S. Fire Ins. Co. and Intern. Ins. Co.

John N. Love (Robins, Kaplan, Miller & Ciresi, Wellesley, Mass., George L. Huber, Jr. and Huber & Lutche, Baltimore, on the brief), for appellee, Employers Mut.

Argued before ROSALYN B. BELL, KARWACKI and CATHELL, JJ.

KARWACKI, Judge.

Appellant, Maryland Cup Corporation, sought a declaration in the Circuit Court for Baltimore County that the appellees, Employers Mutual Liability Insurance Company of Wisconsin (Employers), International Insurance Company and United States Fire Insurance Company (collectively referred to as "International"), are obligated under various insurance policies to defend, indemnify and reimburse appellant for counsel fees in relation to four employment discrimination claims filed against appellant. Each of the appellees moved for summary judgment, arguing that the claims brought against appellant were not covered by the policies. The court (Levitz, J.) granted each of the motions, ruling that complaints filed with the Equal Employment Opportunity Commission (EEOC) and a suit brought in a United States District Court are not claims or suits seeking "damages" as that term is used in the policies. Because we agree, we shall affirm the judgments and need not address the other issues raised by appellant.[1]

---

1. The appellant presented these questions for our review:
   1. Whether the trial court erred in ruling that an action instituted in the federal courts under Title VII of the Civil Rights Act of 1964 requesting back pay and other relief does not constitute a claim or suit seeking "damages" within the meaning of the applicable insurance policies?

*The Claims and Suit Filed Against Appellant*

Summary judgment was granted with respect to the four claims summarized below.

1. *Commissioner Smith*—On January 29, 1979, EEOC Commissioner J. Clay Smith, Jr. filed a charge of employment discrimination against appellant alleging unlawful discrimination on the basis of race and gender in employment recruitment, hiring, promotions, job classification and earnings. Appellant retained independent counsel and requested defense, indemnification and reimbursement of counsel fees from all three appellees by letter dated May 23, 1984. Coverage was denied. At the time this suit was brought, the EEOC was still investigating appellant's hiring policies dating back to 1974.

2. *Iris R. Vincent*—On October 5, 1982, Vincent filed a complaint with the EEOC and the Maryland Commission on Human Relations alleging that she was terminated by appellant based on her national origin. After retaining independent counsel, appellant notified International, requesting defense, indemnification and reimbursement of counsel fees by letter dated November 6, 1984. Coverage was denied. On January 3, 1985, appellant's retained counsel was informed that Vincent had withdrawn her complaint.

3. *Delbert V. Tullius*—On April 6, 1983, Tullius filed a charge of age discrimination against appellant with the EEOC. After the EEOC informed appellant on July 26, 1984 that it would not proceed further with the complaint, appellant requested defense, indemnification and reimburse-

---

2. Whether the trial court erred in ruling that employment discrimination actions filed under Title VII of the Civil Rights Act of 1964 with the Equal Employment Opportunity Commission do not constitute claims or suits seeking "damages" within the meaning of the applicable insurance policies?

3. Whether the trial court erred in ruling that appellees had no duty to defend or reimburse Maryland Cup for legal expenses incurred by it, prior to its tender of notice, in connection with the claims which are the subject of this appeal?

ment of counsel fees from International by letter dated November 16, 1984. Coverage was denied.

4. *Burnell Jackson*—On August 23, 1983, Jackson filed a charge of discrimination against appellant with the EEOC, alleging that he was terminated from his job with a corporation owned by the appellant in Chicago, Illinois, because of his race. The EEOC referred the charge to the Illinois Department of Human Rights and issued Jackson a right-to-sue letter on November 17, 1983. Shortly thereafter, Jackson sued appellant in United States District Court for the Northern District of Illinois. Appellant requested defense, indemnification and reimbursement of counsel fees from International, by letter dated September 5, 1984. Coverage was denied. On October 10, 1984, the United States District Court granted summary judgment in favor of appellant against Jackson.

## *The Insurance Policies*

It is appellant's position that the defense of each of the aforementioned claims is covered by one of the liability insurance policies purchased for the period of October 1, 1977 to April 1, 1984. The first of these policies was purchased from Employers and covered two years beginning October 1, 1977. The policy obligated Employers "[t]o pay on behalf of the insured all sums ... which the insured shall become legally obligated to pay, or with the consent of the company agrees to pay, as damages because of ... [p]ersonal [i]njury." The policy definition of personal injury relevant here is "injury sustained during the policy period arising out of discrimination because of race, religious creed, color or national origin, provided insurance with respect thereto is not prohibited by law."

Appellant then purchased liability insurance from International covering the period from October 1, 1979 to April 3,

1984.[2] The pertinent portions of those insurance policies are set forth below.

## Insuring Agreements

### I. Coverage

The Company agrees to pay on behalf of the insured the ultimate net loss ... which the insured may sustain by reason of the liability imposed upon the insured by law, arising out of an occurrence or assumed by the insured under contract for:

(a) Personal Injury Liability

### II. Defense Settlement

With respect to any occurrence ... the company shall:
(a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent;

### III. Definitions

2. Personal Injury

Personal injury means (a) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury; (b) false arrest, false imprisonment.

7. Occurrence

... occurrence means either an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons or tangible property during the policy period ...

## Analysis

The question of whether the term "damages" in a liability insurance policy is limited to actual legal damages or is to be construed to include virtually any claim for monetary relief has been addressed by courts in a number of jurisdic-

---

**2.** The language of the relevant portions of the insurance policies purchased from International Insurance Company and United States Fire Insurance Company are substantially the same.

tions, producing a distinct split of authority. While neither the Court of Appeals nor this Court has addressed this issue, the United States Court of Appeals for the Fourth Circuit and the United States District Court for the District of Maryland have. *Maryland Casualty Co. v. Armco, Inc.*, 822 F.2d 1348 (4th Cir.1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988) and *Haines v. St. Paul Fire and Marine Ins. Co.*, 428 F.Supp. 435 (D.Md.1977). In both cases, the narrow, technical definition of "damages" was adopted. Consequently, a resolution of this case depends upon whether we choose to adopt the reasoning of these two cases.

*Armco* presents a thorough analysis of this issue. A claim for reimbursement and injunctive relief because of alleged endangerment to the environment at a Missouri hazardous waste site was brought against Armco. Maryland Casualty argued that under its policy "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages ...," *id.* at 1352, coverage for reimbursement and injunctive relief was excluded because it is not "damages". The court was not persuaded by the line of cases construing "damages" broadly and held that "[t]he best approach in construing the term 'damages' as contained in this insurance contract is to afford it the legal, technical meaning described in [*Aetna Casualty and Sur. Co. v. Hanna*, 224 F.2d 499 (5th Cir. 1955).]." The court cited a number of reasons for choosing the narrow construction of "damages", the one most relevant here being the language of the policy itself.

If the term "damages" is given the broad, boundless connotations sought by the appellant, then the term "damages" in the contract between Maryland Casualty and Armco would become mere surplusage, because any obligation to pay would be covered. The limitation implied by employment of the phrase "to pay as damages" would be obliterated.

*Armco,* 822 F.2d at 1352.[3] We find this reasoning persuasive and applicable to the instant case. The Employers policy obligates Employers "to pay on behalf of the insured all sums ... which the insured shall become legally obligated to pay, or with the consent of of the company agrees to pay, **as damages** ..." (emphasis supplied). The International policy obligates International to "defend any suit against the insured alleging such injury or destruction **and seeking damages** on account thereof ..." (emphasis supplied). As in *Armco,* a broad interpretation of the term "damages" renders the clauses "as damages" and "and seeking damages" superfluous. When construing a contract, "effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing, unless no other course can be sensibly and reasonably followed." *Sagner v. Glenangus Farms,* 234 Md. 156, 167, 198 A.2d 277 (1964). We believe that the most reasonable construction of the policies results from interpreting the two clauses as limiting the obligations of the insurers to those cases brought against the insured seeking **legal** damages only.

Appellant urges us to reject the reasoning of *Armco* and *Haines* for that advanced by the line of authority that favors a broad interpretation of the term "damages". These cases offer two distinct rationales. The one advanced by appellant is that the broad construction of "damages" is correct because a reasonably prudent lay person would not make the technical distinction between "damages" and "equitable relief" that the *Armco* court made, and the terms of an insurance policy are to be given the meaning that "a reasonably prudent lay person would" give

---

**3.** In *Haines v. St. Paul Fire & Marine Ins. Co., supra,* attorneys sued their malpractice liability insurer seeking a declaratory judgment that the insurer was required to defend them in a suit brought by the Federal Securities and Exchange Commission. That suit sought injunctive relief and restitution of fees which the attorneys had received in connection with the issuance of securities by their client. The Court held that suit was for traditional equitable relief and could not be considered a claim for damages within the policy coverage.

them. *Pacific Indem. v. Interstate Fire and Casualty Co.*, 302 Md. 383, 388, 488 A.2d 486 (1985). This position was taken in *United States Fidelity and Guar. Co. v. Thomas Solvent Co.*, 683 F.Supp. 1139, 1168–70 (W.D.Mich.1988), where the court adopted Webster's Dictionary's broad definition of damages because an "insured ought to be able to rely on the common sense expectation that ... damage within the meaning of the policy includes a claim which results in causing him to pay sums of money because his acts or omissions affected adversely the rights of third parties." *Id.*, 683 F.Supp. at 1168. *See also Avondale Industries, Inc., v. Travelers Indemnity Co.*, 697 F.Supp. 1314, 1318–19 (S.D.N.Y.1988) ("Cases such as *Armco, Inc.*, which apply a 'legal, technical meaning' to the word 'damages' are inapposite to this case, to which New York law, mandating construction according to 'the reasonable expectation and purpose of the ordinary businessman,' applies." *Id.*, at 1319.); *New Castle County v. Hartford Accident and Indem. Co.*, 673 F.Supp. 1359, 1364–66 (D.Del.1987) ("an ordinary definition of the word 'damages' makes no distinction between actions at law and actions in equity," *id.*, 673 F.Supp. at 1365); *United States Fidelity and Guar. Co., v. Specialty Coatings*, 180 Ill.App.3d 378, 129 Ill.Dec. 306, 310–313, 535 N.E.2d 1071, 1075–78 (1989); *Broadwell Realty Services, Inc. v. Fidelity and Casualty Co. of New York*, 218 N.J.Super. 516, 528 A.2d 76, 82 (1987).

Other cases favoring appellant's position involve the reimbursement of the costs of complying with orders to clean up pollution caused by the insured. This line of cases, best exemplified by *United States Aviex Co. v. Travelers Ins. Co.*, 125 Mich.App. 579, 336 N.W.2d 838, 842–43 (1983) reasons that it is unreasonable for insurance coverage to depend on whether the state decides to clean up the pollution itself and sue for damages or chooses to pressure the insured into performing the cleanup, because it is the reasonable expectations of the parties that should determine liability and not this "mere fortuity." *Id.*, 336 N.W.2d at 843. *See also Firemen's Fund Ins. Companies v. Ex-*

*Cell-o Corp.,* 685 F.Supp. 621, 624–25 (E.D.Mich.1987); *Centennial Ins. Co. v. Lumbermens Mut. Casualty Co.,* 677 F.Supp. 342, 349–50 (E.D.Pa.1987); *Township of Gloucester v. Maryland Casualty Co.,* 668 F.Supp. 394, 399–400 (D.N.J.1987); *United States v. Conservation Chem. Co.,* 653 F.Supp. 152, 214 (W.D.Mo.1986). This second rationale was not advanced by the appellants so it need not be addressed in depth here. We will point out that this argument was effectively rebutted by the Fourth Circuit in *Armco,* 822 F.2d at 1353–54.

Conversely, there are a significant number of cases relied on by the *Armco* court that hold that the narrow construction of "damages" is the proper one. The first case to so hold was *Desrochers v. New York Casualty Co.,* 99 N.H. 129, 106 A.2d 196, 198 (1954), where an insurer was held not responsible for paying the insured's costs of complying with an injunction based on its policy "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages." *Id.,* 106 A.2d at 198. The court ruled that "[d]amages are recompense for injuries sustained" and therefore "[t]he cost of compliance with the mandatory injunction is not reasonably to be regarded as a sum payable 'as damages.'" *Id.*

The *Desrochers* reasoning was adopted by the Fifth Circuit in *Hanna,* 224 F.2d at 499, where the issue concerned an insurance policy "[t]o pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law ... for damages." *Id.* 224 F.2d at 502. The court held that the policy did not cover expenses incident to the defense of mandatory injunctions because "the policy covers only payments to third persons when those persons have a legal claim for damages against the [i]nsured ..." *Id.,* 224 F.2d at 503. The court also pointed out that the term "damages" "has an accepted technical meaning in law." *Id.* Other states have also adopted this approach. *O'Neill Investigations v. Illinois Employment Ins.,* 636 P.2d 1170, 1173–76 (Alaska 1981); *Jaffe v. Cranford Ins. Co.,* 168 Cal.App.3d

930, 214 Cal.Rptr. 567, 570 (1985); *Garden Sanctuary, Inc. v. Insurance Co. of N. Am.*, 292 So.2d 75, 76–77 (Fla.App. 1974); *Board of Educ. v. Country Mut. Ins. Co.*, 121 Ill.App.3d 124, 76 Ill.Dec. 636, 637–38, 459 N.E.2d 273, 274–75 (1984); *Ladd Constr. Co. v. Insurance Co. of N. Am.*, 73 Ill.App.3d 43, 29 Ill.Dec. 305, 391 N.E.2d 568 (1979); *Seaboard Sur. Co. v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 81 Wash.2d 740, 504 P.2d 1139, 1141–42 (1973).

Application of our holding to the four claims brought against appellant compel affirmance of the summary judgments. The Smith, Vincent and Tullius cases were all EEOC complaints, and the Jackson case was a suit brought under Title VII of the Civil Rights Act of 1964 where he was limited to equitable relief only. 42 U.S.C. 2000e–5(g); *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 623, 561 A.2d 179 (1989). Therefore, none of the four claims brought against appellant sought damages as defined by the policies and the appellees were under no obligation to defend, indemnify or reimburse appellant for its counsel fees.

JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY APPELLANT.