**LIDO COMPANY OF NEW ENGLAND, INC.**

v.

**FIREMAN'S FUND INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued Oct. 4, 1989.

Decided May 3, 1990.

Peter M. Garcia (orally), Lynn Dondis, Skelton, Taintor & Abbott, Auburn, for plaintiff.

John S. Whitman (orally), Richardson & Troubh, Portland, for defendant.

Robert S. Frank, Verrill & Dana, Portland, for amicus curiae, Ins. Environmental Law Ass'n.

Lawrence C. Winger, Herbert Bennett & Associates, Portland, for amicus curiae, Chemical Mfrs. Ass'n.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

CLIFFORD, Justice.

This case comes to us on appeal by the plaintiff, Lido Company of New England, Inc. ("Lido"), from a summary judgment entered in favor of the defendant, Fireman's Fund Insurance Company ("Fireman's Fund"), in the Superior Court (Androscoggin County, *Alexander, J.*). We affirm the judgment.

Lido owned and leased service stations which distributed gasoline and diesel fuel in Maine, New Hampshire and Massachusetts. During 1985, gasoline was discovered beneath a Lido station in Plaistow, New Hampshire. The environmental consulting firm hired by Lido determined that gasoline had leaked from the station and spread throughout the ground, resulting in groundwater contamination. The consultants recommended that a gasoline recovery system be installed to prevent further contamination. Lido acted on that recommendation and hired an engineering firm to install such a system. As a result, over 3000 gallons of gasoline were recovered at a cost of over $150,000. Lido's service station remained open for business during the recovery operation.

Fireman's Fund, Lido's comprehensive general liability insurer, agreed to defend and indemnify Lido for the third party damages arising out of the leakage, but refused to compensate it for the costs incurred in cleaning up Lido's own property. Lido brought this action to recover those cleanup costs from Fireman's Fund.[1] The parties agree that this action, brought by a New Hampshire corporation to recover the cost of cleaning up property located in that state, is governed by New Hampshire law. *See Baybutt Const. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 918 (Me. 1983).

The policy at issue provides that Fireman's Fund

will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies....[2]

In 1954 New Hampshire's highest court interpreted liability insurance language nearly identical to the language in this case.[3] In *Desrochers v. New York Cas. Co.*, 99 N.H. 129, 106 A.2d 196 (1954), the Desrochers sought a declaration that their general liability insurer should pay for the cost of removing an obstruction on the Desrochers' property that a court ordered them to remove because it was impeding

---

1. Lido amended its complaint to add Count II, a claim of breach of good faith and fair dealing and Count III, alleging estoppel. The Superior Court entered summary judgment for Fireman's Fund on all counts. ·Lido pursues its original contract claim and the estoppel claim in this appeal.

2. The policy also contains a standard owned-property exclusion clause as follows:

   This insurance does not apply:

   ....

   (k) to property damage to ... property owned or occupied or rented to the insured....

3. The policy in that case provided that the defendant insurer, New York Casualty Company, agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages ... because of injury to or destruction of property, including the loss of use thereof." *Desrochers v. New York Cas. Co.*, 99 N.H. 129, 106 A.2d 196, 198 (1954).

the natural flow of water and flooding a neighbor's property. The insurer did pay monetary damages awarded to a neighbor against the Desrochers, but the Supreme Court of New Hampshire refused to order the insurer to pay for the cost of removing the obstruction as required by a mandatory injunction. The court concluded that such costs were not sums that the Desrochers were obligated to pay as damages within the meaning of the general liability policy. *Desrochers*, 106 A.2d at 199.

Lido has failed to demonstrate that New Hampshire's highest court would reject the precedent set in *Desrochers* [4] and interpret the language of the "damages which the insured shall become legally obligated to pay" to include responsibility for costs of cleaning up gasoline on the insured's own property.[5]

■ The Superior Court likewise rejected Lido's contention that Fireman's Fund is estopped from denying coverage for the spill in New Hampshire because it had previously paid for cleanup of an earlier spill on Lido property in Massachusetts. Even if the scope of coverage under a policy of insurance could be expanded by estoppel, *see Cushman v. Grafton County*, 97 N.H. 32, 79 A.2d 630, 633 (1951), the allegations made by Lido do not constitute the elements of estoppel. *Hodge v. Allstate Ins. Co.*, 130 N.H. 743, 546 A.2d 1078, 1080 (1988).

The entry is:

Judgment affirmed.

All concurring.

---

**4.** On February 13, 1990, the New Hampshire Supreme Court vacated as improvidently granted a previously accepted appeal and summarily affirmed a New Hampshire Superior Court decision that, relying on *Desrochers*, concluded that clean-up costs were not damages under a comprehensive liability policy. *Troy Mills, Inc. v. Aetna Cas. & Surety Co.*, No. 89–311.

**5.** In *Patrons Oxford Mut. Ins. Co. v. Marois*, 573 A.2d 16 (Me.1990), we reviewed under Maine law a policy containing identical general liability language and concluded that the costs of cleaning up an insured's property under an order of the Department of Environmental Protection, are not damages for "which the insured shall become legally obligated to pay" within the meaning of the liability policy. *Id.* at 18–20.