Strafford
No. 87-309

## DAWN HODGE

v.

## ALLSTATE INSURANCE COMPANY

August 5, 1988

*Wyskiel, Boc & Reid P.A.*, of Dover (*William E. Boc* on the brief and orally), for the plaintiff.

*McDonough & O'Shaughnessy P.A.*, of Manchester (*Michael B. O'Shaughnessy* and *Robert J. Rabuck* on the brief, and *Mr. Rabuck* orally), for the defendant.

JOHNSON, J. The defendant, Allstate Insurance Company (Allstate), appeals from the decision of the trial court finding that an automobile liability insurance policy was in existence between Allstate and the plaintiff, Dawn Hodge, and provided coverage on February 22, 1985, when she was involved in an automobile accident.

Hodge filed a petition for declaratory judgment against Allstate pursuant to RSA 491:22 to determine coverage. Allstate claimed her policy had been cancelled prior to the accident. The Superior Court (*Temple*, J.) approved the report of the Master (*R. Peter Shapiro*, Esq.) recommending a finding that there was an insurance policy in existence, but that attorney's fees not be awarded to Hodge pursuant to RSA 491:22-b. Allstate appeals the determination that a policy existed, and Hodge appeals the decree relative to attorney's fees. We affirm the decision relative to the existence of an insurance policy and reverse as to attorney's fees.

Hodge obtained her first insurance policy from Allstate in 1982. The agent she dealt with at that time was David Beauman, whose office was in Rye and who is employed by Allstate to write policies solely for that company. She continued to have contact with Beauman thereafter, although she generally made payments on her policies by stopping off at the Somersworth office of Allstate to turn over the funds for each premium due.

The policy in dispute in this action was one that covered the period from October 24, 1984, through April 24, 1985. The premiums on this policy were due in four equal installments on the 24th of October, November, December and January. When Hodge received the bill for the above period of coverage, the total premium was set at $221.50, with four monthly payments of $57.38. Since her previous six-months policy had had a total premium of $171.50 (four payments of $44.88), she contacted Beauman for an explanation. He advised her that a "point" had been added to her policy because of an accident. She protested that the accident for which the point was added had occurred at a time when her auto was

parked and she was not inside it. Beauman examined her file, agreed that Allstate was in error in assessing her for this accident, and informed her that she should make the usual payment of $44.88. He also assured her that he would take care of the error. Hodge relied on Beauman's representation and made her first payment of $44.88.

In November, Hodge received a bill that said she now owed $69.87 on her policy, since she had not made the full payment of $57.38 in October. She again called Beauman, who advised her to make only the $44.88 payment, which she did. December was a replay of November. Hodge received a bill that showed she then owed $82.37. Hodge again called Beauman, who stated "everything was taken care of," and to make her usual payment of $44.88. Hodge did not make her December payment, however, until January 18, 1985, when she paid $89.76 ($44.88 for December and $44.88 for January) at the Allstate office in Somersworth.

On January 7, 1985, Allstate mailed a document to Hodge entitled "Notice of Cancellation for Non-Payment of Premium," which stated that the amount past due was $82.37 and that the policy would be cancelled on January 18, 1985, at 12:01 a.m. unless the full amount of $82.37 had been paid to Allstate by that time.

On February 5, 1985, Allstate mailed a letter to Hodge by regular mail which stated that her policy had been cancelled, and which she admitted to having received. On February 7, 1985, Allstate sent a second, certified letter to Hodge informing her of the cancellation of her policy. A copy of this letter was sent to Beauman. Hodge received a notice that a certified letter was available at the post office on February 11, but did not pick up the letter until after the accident on February 22. She discussed the cancellation notice that she had received with Beauman by telephone on February 9th or 10th, and the master specifically found that Beauman told her to disregard the cancellation notice. There is evidence from which the master could have found that Beauman had received a copy either of the February 5th cancellation notice or of the February 7th cancellation letter, or both, when he told her to disregard the cancellation notice during their telephone conversation.

Allstate argues that one who deals with an agent does so at his peril and has the obligation to ascertain the extent of the agent's authority, and that Beauman lacked authority to countermand Allstate's notice of cancellation. However, it is established law in this State that "[the insurance agent's] acts are imputed to [the insurer] to the extent permitted by common law, and the insurer is bound by those acts." *Johnson v. Phenix Mut. Fire Ins.*

*Co.*, 122 N.H. 389, 393, 445 A.2d 1097, 1099 (1982) (citations omitted).

The master found that Beauman's failure to warn Hodge during their conversation in February that her policy had lapsed caused Allstate to be "estopped from denying coverage to her for the February 22, 1985 accident." The elements of estoppel are:

> "(1) a representation or a concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it; and (5) the other party must have been induced to act upon it to his prejudice."

*Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 442, 388 A.2d 940, 942 (1978) (quoting *Monadnock School District v. Fitzwilliam*, 105 N.H. 487, 491–92, 203 A.2d 46, 49–50 (1964) (itself quoting *Steven v. Dennett*, 51 N.H. 324, 333–34 (1872))). As we determined in *Johnson*, the common law permits us to impute the insurance agent's acts to the insurer where all of these elements are present. *Johnson supra.*

■ We find that all of the essential elements of estoppel are present in this case. The master found that Beauman represented to Hodge that she could disregard the cancellation notice, after she had notified him of its receipt; Beauman had knowledge of the fact that Allstate had cancelled Hodge's policy because the billing error had not been resolved; Hodge was ignorant of the fact that Beauman had failed to "take care of the problem" of the improper billing; Beauman intended that Hodge act on his advice to disregard the cancellation notice; and Hodge did so to her prejudice. Accordingly, we find that the master's determination that Allstate was estopped to deny coverage was supported by the evidence. *See Cheshire Oil Co. v. Springfield Realty Corp.*, 118 N.H. 232, 238–39, 385 A.2d 835, 840 (1978).

Turning now to Hodge's cross-appeal relative to attorney's fees, the master found that this was a contract action to determine the existence of an insurance policy and not one to determine whether there was coverage under an existing policy. Hence, the master found that RSA 491:22-b was not applicable. We disagree. RSA 491:22-b reads as follows:

"In any action to determine coverage of an insurance policy pursuant to RSA 491:22, if the insured prevails in such action, he shall receive court costs and reasonable attorneys' fees from the insurer."

■■ In interpreting this statute, "'[i]t is well established that the words in the statute itself are the touchstone of the legislature's intention.'" *Appeal of Locke*, 127 N.H. 403, 405, 503 A.2d 754, 755 (1985) (quoting *Greenhalge v. Town of Dunbarton*, 122 N.H. 1038, 1040, 453 A.2d 1295, 1296 (1982)). The words and phrases of a statute are to be given their common and approved usage, provided the term has no "technical or otherwise peculiar meaning." *Appeal of Town of Hampton Falls*, 126 N.H. 805, 809, 498 A.2d 304, 307 (1985); RSA 21:2.

■■ We hold that the phrase "to determine coverage," by its plain meaning, *Chemical Bank v. Rinden Prof. Ass'n*, 126 N.H. 688, 696, 498 A.2d 706, 713 (1985), includes a determination either of the existence of an insurance contract or that an existing insurance contract covers the particular incident in question, or both. Hence, when Hodge filed her petition for declaratory judgment disputing Allstate's position that the policy had lapsed, she was seeking "to determine coverage of an insurance policy." As the prevailing party, she is entitled to receive costs and reasonable attorney's fees from the insurer pursuant to RSA 491:22-b.

■ There is a second reason that Hodge should receive costs and attorney's fees. Her original petition in this case was entitled "Petition for Declaratory Judgment," and in paragraph 1 she stated that her action was brought "pursuant to RSA 491:22. . . ." Allstate filed, in response, an "Answer to Petition for Declaratory Judgment" which stated, "Defendant, admits the allegations contained in paragraph 1 of plaintiff's Petition for Declaratory Judgment" (those allegations were that Hodge sought a "declaration of the parties' rights under a certain policy of automobile insurance" and that she invoked RSA 491:22 as the statutory foundation for her petition). Allstate thus admitted that this action would be governed by RSA 491:22 *et seq.* Having once agreed on the playing field, Allstate is in no position now to claim that Hodge is not entitled to the benefit of RSA 491:22-b.

*Affirmed in part; reversed in part; remanded.*

All concurred.