951 F.2d 872
 22 Envtl. L. Rep. 20,655
 C.C. GRISHAM, Individually and as next friend of Hallie C.
Ormond; Hallie Ormond; Mass Merchandisers, Inc.;
McKesson Corporation, Appellants,
v.
COMMERCIAL UNION INSURANCE COMPANY; St. Paul Fire and
Marine Insurance Company; Aetna Casualty and Surety
Company; City Insurance Company; Columbia Casualty
Company; Home Indemnity Company; Transamerica Insurance
Company, Appellees.
 No. 89-1481.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 30, 1991.
Decided Dec. 9, 1991.
Rehearing and Rehearing En Banc Denied Jan. 24, 1992.
 
 Stephan G. Weil, Washington, D.C., argued (Jerold Oshinsky, Leon B. Kellner and Andrew M. Reidy, Washington, D.C., Charles R. Shaddox, San Antonio, Tex., and Michael H. Mashburn, Fayetteville, Ark., on brief), for appellants.
 Roger E. Warin, Washington, D.C., argued (Walter B. Cox and Tim E. Howell, Fayetteville, Ark., Richard H. Gimer, Theodore A. Howard and Richard A. Ifft, Washington, D.C., Lisa Dickieson, James E. Rocap, III, Anne M. Coughlin, Thomas W. Brunner, Walter J. Andrews and Kirk J. Nahra, Washington, D.C., Michael F. Aylward, Boston, Mass., Mitchell L. Lathrop, Kathy P. Waring and Thomas P. Irving, San Diego, Cal., on briefs, for appellees James P. Whitters, III, Martha J. Koster and Lee H. Glickenhaus, Boston, Mass., filed amicus brief.
 Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 On March 8, 1991, we filed our opinion affirming the summary judgments entered by the district court[1] in favor of appellee insurers. 927 F.2d 1039. Appellants filed a petition for rehearing, with a suggestion for rehearing en banc, contending that the Supreme Court's intervening decision in Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), which requires courts of appeals to review de novo district courts' determinations of state law, compels a result different from that reached in our March 8 opinion. We granted rehearing by the panel and vacated our original opinion. We now file this amended opinion, and we again affirm.
 
 
 2
 Hallie C. Ormond, C.C. Grisham, Mass Merchandisers, Inc., and McKesson Corporation (collectively, Appellants) have sought coverage from the appellee insurers for various environmental claims arising from the ownership and operation of a wood treatment facility located near Omaha, Boone County, Arkansas (the "Arkwood Site").
 
 
 3
 The Arkwood Site consists of approximately twenty acres of land. From approximately 1964 or 1965 until January 1, 1985, when the wood treatment facility was closed, fence posts and other lumber products were treated at the Arkwood Site with creosote, pentachlorophenol (PCP), and other chemical preservatives.
 
 
 4
 During the twenty-plus years of treatment operations at the Arkwood Site, excess treatment fluid containing creosote, PCP, and other chemicals was generated in the normal course of business operations. It was a standard operating procedure for many years to wash down the treatment cylinders and then pump the waste onto the ground and to spread it around the plant area for weed and dust control.
 
 
 5
 After an investigation into alleged environmental contamination at the Arkwood Site, the Arkansas Department of Pollution Control and Ecology filed a complaint against Ormond and Mass Merchandisers, Inc. in September of 1986, seeking a permanent injunction against the owners and operators of the Arkwood Site to cease and abate the pollution of Arkansas waters and to remove or contain wastes at the Arkwood Site that were likely to cause such pollution.
 
 
 6
 In April of 1987, the United States Environmental Protection Agency (EPA) filed an action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601, et seq., seeking access to the Arkwood Site for the purpose of conducting an investigation. The suit also sought an injunction under sections 104(e)(5) and 106(a) of CERCLA to enjoin any action that might interfere with the EPA's inspection. The EPA also issued an administrative order pursuant to section 106(a) of CERCLA directing the owners and operators of the Arkwood Site to undertake action to protect the public health and welfare and the environment from the endangerment presented by the actual or threatened release of hazardous substances from the Arkwood Site. The administrative order also directed the parties to undertake specific remedial actions with respect to the release or threat of release of hazardous substances from the Arkwood Site.
 
 
 7
 None of the above-described state and federal actions sought the payment of money to a government agency, or the payment of any kind of compensation.
 
 
 8
 During the periods of operation at the Arkwood Site, the several insurers issued various insurance policies to Ormond, Grisham, Mass Merchandisers, Inc., and/or McKesson Corp. All of these policies included a provision in their insuring agreement to the effect that "[t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." These policies also provide that "the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage."
 
 
 9
 This appeal arises from a suit originally commenced in state court in Texas by Grisham in March of 1987. That action sought a declaration of entitlement to a defense and indemnification policy issued to Ormond by appellee Maryland Casualty Co. The suit was ultimately removed to federal court and then transferred to the Western District of Arkansas.
 
 
 10
 In June of 1987, Maryland Casualty Co. filed a declaratory judgment action against Ormond in the Western District of Arkansas seeking a declaration that the insurance coverage it had sold to Ormond did not cover monies expended by Ormond pursuant to the governmental actions described above.
 
 
 11
 On January 6, 1989, the district court entered summary judgment for Maryland Casualty Co. in the Ormond action, holding that "clean-up costs are not encompassed within the meaning of the word 'damages' in the standard form [comprehensive general liability] policies at issue." Memorandum Opinion at 12 (January 6, 1989). In reaching this conclusion, the district court found that because the provisions of Arkansas state law regarding the interpretation of insurance contracts are not substantially different from those of the state of Missouri, this court's opinion in Continental Ins. Co. v. Northeastern Pharmaceutical & Chem. Co., Inc. (NEPACCO), 842 F.2d 977 (8th Cir.), cert. denied, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988), required it to hold that the policies in question do not provide the insurance coverage sought by appellants. On February 8, 1989, the district court entered summary judgment in favor of the insurers in the Grisham action on the basis of its earlier ruling in Ormond.[2]
 
 
 12
 Appellants have cited a number of cases that have disagreed with NEPACCO's interpretation of the word "damages." Among those cases is the recent decision of the Court of Appeals for the District of Columbia in Independent Petrochemical Corp. v. Aetna Casualty & Surety Co., 944 F.2d 940 (D.C.Cir.1991), which concluded that in NEPACCO this court had ignored clear signals emanating from the Missouri state courts and had clearly misread Missouri law. 944 F.2d at 945. We do not pause to tally the score of those circuits that agree with our decision in NEPACCO and those that do not. See National Law Journal, Nov. 25, 1991, at 28 (three federal circuits have ruled against coverage for cleanup costs and four have ruled in favor of coverage). Whatever the disagreeing courts have said about NEPACCO, that decision is binding upon us until overruled by our court en banc. Thus, our review of the district court's decision in this case is limited to the question whether the Supreme Court of Arkansas would interpret the insurance policies at issue as we did the policies in NEPACCO. Having completed the de novo review mandated by Salve Regina College, we conclude that it would.
 
 
 13
 Arkansas case law embodies many of the same principles embraced by decisions of the Missouri courts that we reviewed in NEPACCO. See, e.g., CNA Ins. Co. v. McGinnis, 282 Ark. 90, 666 S.W.2d 689 (1984); Southern Farm Bureau Cas. Ins. Co. v. Williams, 260 Ark. 659, 543 S.W.2d 467 (1976); Arkansas Kraft Vendors v. Horton, 15 Ark.App. 123, 690 S.W.2d 370 (1985). We are persuaded that the Supreme Court of Arkansas would resolve this case in the same way as we resolved NEPACCO based on our reading of Home Indem. Co. v. City of Marianna, 291 Ark. 610, 727 S.W.2d 375 (1987). There, the court examined decisions from other jurisdictions that had ruled on the question whether policy language providing that "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage" refers only to legal damages or to any money to be paid as a result of litigation. In Marianna, the court discussed Aetna Cas. & Surety Co. v. Hanna, 224 F.2d 499 (5th Cir.1955), and Ladd Constr. Co. v. Insurance Co. of N. Am., 73 Ill.App.3d 43, 29 Ill.Dec. 305, 391 N.E.2d 568 (1979), in which this language was held to exclude all but legal damages. The Arkansas court found that neither Hanna nor Ladd Constr. Co. governed the case before it because of the difference in policy language. "It might be possible to agree with the Ladd and Hanna courts if Home's policy was essentially identical to those. The Hanna court expressly observed that Aetna's obligation to pay damages was 'plain and unambiguous.' Whereas, Home's policy presents contradictions." Marianna, 727 S.W.2d at 378. In the case before us, however, the policy language is identical to that considered in Hanna, Ladd, and NEPACCO.
 
 
 14
 As we reasoned in NEPACCO, to read the phrase "all sums which the insured shall become legally obligated to pay as damages" to cover all litigation costs and other ordered relief would ignore the limiting language "legally obligated to pay as damages" (emphasis added). 842 F.2d at 986. To extend coverage beyond the legal damages specified in the contract would run counter to the Arkansas Supreme Court's pronouncement that "[t]he terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." Southern Farm Bureau Cas. Ins. Co., 543 S.W.2d at 470. Likewise, such a holding would fly in the face of the principle that courts should not "indulge in a forced construction outside the intent of either party." Continental Cas. Co. v. Didier, 301 Ark. 159, 783 S.W.2d 29, 32 (1990). Accordingly, in the absence of any intervening pronouncements by the Arkansas courts, and in the absence of any certification procedure that might enable us to seek the view of the Supreme Court of Arkansas on the question, we believe that the Arkansas courts would follow our holding in NEPACCO.[3]
 
 
 15
 The district court's judgment is affirmed.[4]
 
 
 
 [1]
 The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas
 
 
 [2]
 The appeal in the Ormond action was dismissed on February 27, 1990, pursuant to an agreement between the parties
 
 
 [3]
 We note that another panel of this court has reached the same conclusion in a similar Arkansas case. Parker Solvents Co., Inc. v. Royal Ins. Cos., 950 F.2d 571 (8th Cir.1991)
 
 
 [4]
 We again reject, as we did in our original opinion, appellants' contention that a March 1989 amendment to the Arkansas Remedial Action Trust Fund Act, Ark.Stat.Ann. §§ 8-7-501 et seq., makes clear that the policies in question provide the coverage appellants seek