**FEDERATED RURAL ELECTRIC INSURANCE CORPORATION,**
Plaintiff,

v.

**ARKANSAS ELECTRIC COOPERATIVES, INC.,**
Defendant.

**ARKANSAS ELECTRIC COOPERATIVES, INC., Plaintiff,**

v.

**FEDERATED RURAL ELECTRIC INSURANCE CORPORATION,**
Defendant.

Nos. LR–C–93–869, LR–C–94–034.

United States District Court,
E.D. Arkansas,
Western Division.

May 19, 1994.

Jim L. Julian and Janie W. McFarlin, Chisenhall, Nestrud & Julian, P.A., Little Rock, AR, for plaintiff.

Robert Lyford, Arkansas Elec. Cooperatives, Inc., and N.M. Norton, Jr., M. Samuel Jones and Charles L. Schlumberger, Wright, Lindsey and Jennings, Little Rock, AR, for defendant.

### *ORDER*

ROY, District Judge.

Now before the Court is the motion of Arkansas Electric Cooperatives Inc. ("AECI") to dismiss, or alternatively, to stay proceedings (DOC #5). The basis for AECI's motion relates to the existence of a lawsuit pending in state court between these parties in which the identical legal issue at controversy in this case is set to be decided. Movant asks this Court to abstain pending the outcome of that state action. The Court will review the relevant procedural histories of the several related cases.

Federated Rural Electric Insurance Corporation ("Federated") has provided comprehensive general liability insurance ("CGL") to AECI since at least October 1971. In 1988 the federal government notified AECI that the company might be liable for certain cleanup costs pursuant to federal environmental law. AECI then informed Federated of the potential claim. Ultimately, AECI was in fact held responsible for payment of a portion of the cleanup costs and demanded Federated provide coverage. By letter of February 3, 1993, Federated formally denied coverage, asserting that the CGL coverage did not cover such costs.

On July 13, 1993, AECI filed suit in Saline County, Arkansas Circuit Court seeking a declaration that Federated was obligated to provide coverage. AECI sought relief on the single Commercial Umbrella Policy in effect for the period October 1, 1976 to October 1, 1977. Federated then sought to remove that action to federal court on diversity grounds. However, the Hon. Henry Woods ruled that the matter before him was narrowly pled and related only to a policy with a coverage amount less than $50,000, and the case therefore lacked the minimum amount in controversy to provide him with jurisdiction. The matter was remanded to Saline County where it is still pending.

Meanwhile, on October 11, 1993, AECI filed suit in the Pulaski County Circuit Court seeking declaratory relief as to coverage under the remaining policies it had with Federated. After Judge Woods' order was entered in the Saline County case remanding that matter to state court, Federated filed its own declaratory judgment action in federal court on December 6, 1993, against AECI involving the same legal issue.[1] (Case # LR–C–93–869, the "lead case" before this Court).

On January 19, 1994, Federated removed the Pulaski County case to this Court (# LR–C–94–034), then moved that it be consolidated with the case which had been filed here originally (# 93–869). After AECI stated that it would not oppose the motion, the Court consolidated the two matters pursuant to Rule 42 of the Federal Rules of Civil Procedure on February 16, 1994. The Court now addresses the motion of AECI to either dismiss or stay this matter until the Saline County action is resolved in state court.

\* · \* \*

The legal "bobbing and weaving" described above is motivated by AECI's and Federated's respective desires to either avoid, or be subject to, the Eighth Circuit Court of Appeals' decision in *Continental Insurance Companies v. Northeastern Pharmaceutical & Chemical Company, Inc.*, 842 F.2d 977 (8th Cir.1988) (*en banc, cert. denied sub nom Missouri v. Continental Ins. Cos.*, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) ("*NEPACCO*")). *NEPACCO* might fairly be described as the Eighth Circuit's most controversial insurance law decision in recent history. At stake were millions of dollars of claims in identically worded CGL insurance policies for reimbursement of cleanup, or "response" costs incurred by entities held liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and "abatement" costs relating to the Resource Conservation and Recovery Act of 1976 ("RCRA"), as amended, 42 U.S.C. § 6973(a).

In *NEPACCO*, the Court of Appeals held, in a 5–3 opinion, that under Missouri law "the term 'damages' in the standard-form comprehensive general liability insurance ... policy does not include cleanup costs." 842 F.2d at 979. That state law would govern the interpretation of the insurance contracts was not disputed in *NEPACCO*. "We all agree that the question whether clean-up costs are 'damages' within the meaning of a

---

1. The pertinent language in all of these CGL policies is virtually identical. All of the policies in question which have been examined by the Court read as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obliged to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

It is the central argument of all of the insurance companies involved in cases of this type that response costs and other equitable claims sought by the insureds are not "damages" within the meaning of the insurance contracts.

CGL policy is an issue of Missouri law." *NEPACCO*, 842 F.2d at 987–88 (Judge Heaney dissenting).

Most of the criticism of the majority opinion in the *NEPACCO* case, however, seems to center on the majority's treatment of long-established principles of insurance policy construction under Missouri law. "[T]he *en banc* decision seems to ignore settled Missouri law and its conclusion is hard to reconcile with its analysis." *Maryland Casualty Company v. Ormond,* No. 87–3038, slip op. (W.D.Ark. Jan. 6, 1989).[2]

> The critics charge that absent express language in the insurance contract to the contrary, there is no way a court following Missouri rules of construction can infer that the term "damages" in a CGL contract was intended to have a legalistic, technical meaning, rather than the meaning generally ascribed to it by a lay person. That is to say, to a lay person "the plain meaning of damages does not distinguish between sums awarded on a 'legal' or 'equitable' basis ..." *Boeing v. Aetna Casualty and Surety Co., et al.,* 784 P.2d 507, 515 (Wash.S.Ct.1990).

*Employers Insurance of Wausau, et al. v. Solid State Circuits, Inc., et al.,* No. 87–3430–CV–S–2, slip op. at 5–6 (W.D.Mo. June 27, 1990).[3] In *Boeing,* the Washington Supreme Court was considering a question certified from the United States District Court for the Western District of Washington. After criticizing the reasoning of *NEPACCO,* the Court concluded that response costs constitute "damages" within the meaning of standard CGL policies.

Some Courts of Appeals have criticized the *NEPACCO* decision as well. For example, in *Independent Petrochemical Corp. v. AETNA Casualty & Surety Co.,* 944 F.2d 940 (D.C.Cir.1991), the Court of Appeals for the District of Columbia concluded that in *NEPACCO* the Eighth Circuit "fail[ed] to apply ... Missouri law principles" relating to contract interpretation when examining the insurance policies in question. While acknowledging that "a home circuit's view of state law is entitled to deference," the D.C. court wrote:

"Deference is one thing; blind adherence quite another. [W]e will not follow another circuit's decision if that court 'ignored clear signals emanating from the state courts' or '*clearly misread* state law.' " *Ibid,* at 944–45 (citations omitted) (emphasis in original). Nevertheless, *NEPACCO* still controls interpretation of CGL policies when applying Missouri law.

In *Grisham v. Commercial Union Ins. Co.,* 951 F.2d 872 (8th Cir.1991), the Eighth Circuit heard an appeal of a CGL case from the Western District of Arkansas. Again acknowledging that state law controlled, the Court declared its review would be "limited to the question whether the Supreme Court of Arkansas would interpret the insurance policies at issue as we did ... in *NEPACCO*." *Id.,* at 875. The Court concluded: "*in the absence of any intervening pronouncements by the Arkansas courts, ...* we believe that·the Arkansas courts would follow our holding in *NEPACCO*." *Id.* (emphasis added) (footnote omitted). *Accord Parker Solvents Co., Inc. v. Royal Insurance Cos.,* 950 F.2d 571 (8th Cir.1991) (different panel). Thus, the CGL policy interpretation made in *NEPACCO* has been made binding on district courts sitting in Arkansas.[4]

---

2. The Hon. H. Franklin Waters, Chief Judge, Western District of Arkansas.

3. The Hon. William R. Collinson, Senior District Judge, Western District of Missouri.

4. Though the district court in *Grisham* found for the insurance companies, he obviously felt "constrained to hold that *NEPACCO* is dispositive of this case."

> Were this court writing on a *tabula rasa,* it might decide that a traditional analysis would stress that the court is obliged·not only to construe the ambiguity strictly against the insurer and resolve all reasonable doubts in favor of the insured, ... but also to construe the policy so as to provide coverage unless it is patently unreasonable to do so.... Because the word "damages" could reasonably be construed to include clean-up costs, it may necessarily follow that to construe the term so as to include clean-up costs would not be unreasonable.

However the *NEPACCO* court said clearly:

> In the insurance context, however, the term "damages" is not ambiguous, and the plain meaning of the term "damages" as used in the insurance context refers to legal damages and does not include equitable monetary relief....

*NEPACCO,* 842 F.2d at 985–86.

*Maryland Casualty v. Ormond, supra.*

It is inherently difficult for state courts ever to get an opportunity to interpret CGL policies because of the almost inevitable presence of both an out of state insurance company and a policy amount in excess of $50,000. Actions are either filed in federal courts originally, or are removed there by the insurance company, in either case pursuant to 28 U.S.C. § 1332 ("diversity" jurisdiction). The two cases consolidated before this Court are typical examples. However, by virtue of Judge Woods' order mentioned above, there now exists a case in Saline County destined to be decided in Arkansas' *state* court system. This Court notes that the Saline County case was filed in state court *before* either of the two cases before this Court were ever filed.

\* \* \*

"Under certain circumstances, courts best exercise their discretion by electing not to decide." *Employers Association, Inc. v. United Steelworkers of America*, 19 F.3d 405 (8th Cir.1994). "[O]ne consideration in deciding whether to abstain from granting declaratory relief is whether there is a prior pending state court action: '[P]articularly where there is an identity of issues, [the existence of a prior state action] is an important factor to consider.'" *Ibid*, quoting *State Farm Mutual Automobile Insurance Co. v. Bonwell*, 248 F.2d 862, 866 (8th Cir.1957).

Given that there is a "prior pending state court action" with identical issues to the two cases before this Court, and given the importance, in this Court's opinion, of allowing Arkansas' courts an opportunity to address this issue, it is the holding of this Court that these proceedings shall be stayed until such time as the action known as Saline County Circuit Court No. 93–444–2 has been finally resolved. Thus, AECI's motion to stay (DOC # 5) is granted in part. This case shall be closed administratively.

IT IS SO ORDERED.