both rock and powder forms, were seized during the search."

FLOYD'S SALES & SERVICE, INC., Plaintiff,

v.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant.

No. 7:CV94–5020.

United States District Court, D. Nebraska.

Aug. 29, 1995.

Simmons, Olsen Law Firm, James M. Worden, Scottsbluff, Nebraska, for plaintiff.

Kay, Kay Law Firm, Stephen W. Kay, North Platte, Nebraska and Bates, Meckler Law Firm, Robert J. Bates, Jr., Catherine M. Crisham, Chicago, Illinois, for defendant.

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

Before the court is filing no. 16, the motion for summary judgment filed by the defendant, Universal Underwriters Insurance Company ("UUIC"), on the ground that "[u]nder Nebraska law, the policies in this action do not provide coverage for the 'response costs' for which plaintiff seeks coverage."

### BACKGROUND

On July 21, 1994, Floyd's Sales & Service, Inc. ("Floyd's Sales") filed a "Petition for

Declaratory Judgment" in the District Court for Scotts Bluff County, Nebraska (filing no. 1). By its petition filed in state court, Floyd's Sales sought the declaration that the general liability policies issued by UUIC for the period "from 1970–1982" (¶ 9 and prayer in the petition for declaratory judgment) obligated UUIC to pay damages which Floyd's Sales paid in settlement of a claim under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 et seq.). In its petition, Floyd's Sales alleges that it is unable to locate the insurance policies issued by UUIC. Nevertheless, Floyd's Sales alleges that between the years of 1970 to 1982 Floyd's Sales contracted with UUIC for a general liability insurance policy "for coverage on behalf of the Plaintiffs for all sums which the Plaintiffs became legally obligated to pay as damages due to property damage caused by an occurrence," and additionally alleges that the insurance policies "provided for the defense of lawsuits involving claims on covered matters" (filing no. 1).

Floyd's Sales further alleges that on January 8, 1993, it became a third-party defendant as the result of a third-party action to recover "response costs and contribution" from Floyd's Sales pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f)(1) ("Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title. . . ."). Floyd's Sales also alleges that it demanded that UUIC, pursuant to the policies in issue, accept the defense of the action, but that UUIC "has denied coverage and refused defense as requested by Plaintiff." Finally, Floyd's Sales alleges that it entered into a settlement agreement with the third-party plaintiff for $12,000 which includes "clean-up of all hazardous wastes on the site, excluding ground water contamination," and, additionally, that Floyd's Sales has incurred $9,552.50 in attorney's fees and $854.47 in costs of defending the third-party action.

In its petition, Floyd's Sales requests that (1) the court enter a declaratory judgment that UUIC was the general liability insur-ance carrier for Floyd's Sales from 1970 to 1982, and that the applicable insurance policies issued by UUIC provided coverage for "all sums which the Plaintiffs became legally obligated to pay as damages due to property damage caused by an occurrence;" and (2) the court order UUIC to pay Floyd's Sales $12,000 which was the amount of the settlement; $9,552.50 in attorney fees incurred in the third-party action; and $854.46 in costs sustained in the third-party action.

In its summary judgment motion, UUIC states: "For purposes of this motion, Universal Underwriters move for summary judgment *only* with respect to the ten (10) policies enumerated above, which were in effect during the period July 1, 1981 through July 1, 1991 and of which the parties have copies. No other policies are at issue in this Motion" (filing no. 16). Consequently, as specified in UUIC's summary judgment motion, 10 policies issued by UUIC to Floyd's Sales are involved in UUIC's summary judgment motion, namely, policy nos. 348624 E to 348624 N for the corresponding annual periods extending from July 1, 1981 to July 1, 1991. Each policy states under its heading "UNI-COVER COVERAGE PART 950 GENERAL LIABILITY INSURANCE" as follows:

INSURING AGREEMENT—WE will pay all sums the INSURED legally must pay as damages (including punitive damages where insurable by law) because of INJURY to which this Coverage Part applies, caused by an OCCURRENCE. . . .

WE have the right and duty to defend any suit asking for these damages. WE may investigate and settle any claim or suit WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend.

WE have no right or duty to defend suits for damages not covered by this Coverage Part.

The definitional section immediately following the "INSURING AGREEMENT" does not define the word "damages." *Id.*

The period of UUIC's coverage alleged by Floyd's Sales extends from 1970 to and including 1982, while the period specified by UUIC in its summary judgment motion extends from July 1, 1981 to and including July

1, 1991. Consequently, the periods of coverage do not completely coincide because, as the pleadings now stand, Floyd's Sales does not assert any claim of coverage for any time after 1982, and UUIC's policies do not pertain to any time before 1981. Thus, although UUIC seeks summary judgment on the ground that its policies for the period from July 1, 1981 to July 1, 1991, namely, policy nos. 348624 E to 348624 N, do not cover response costs, Floyd's Sales' declaratory judgment action pertains only to the policies issued for the period from 1970 to 1982 and, therefore, includes the policy periods from July 1, 1981 to December 31, 1982. Hence, the issue presently before the court is whether the "as damages" provision in UUIC's two insurance policies for the period from July 1, 1981 to December 31, 1982, namely, policy nos. 348624 E and 348624 F, covered "response costs" caused by an occurrence within the period of the two policies.

## ANALYSIS

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

■ The court must examine the record in the light most favorable to the plaintiff, the nonmoving party. *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992). However, in response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.*

■ "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In addition, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment as a matter of law.... Instead, 'the dispute must be outcome determinative under prevailing law.'" *Get Away Club, Inc.,* 969 F.2d at 666.

■ The sole issue before the court is whether the designated general liability insurance policies between UUIC and Floyd's Sales covered both legal and equitable claims. "In construing an insurer's duty to defend the insured under an insurance contract, courts generally distinguish damage claims from equitable claims. Damages are remedial, pecuniary and intended to compensate for injury suffered. In contrast, restitution restores plaintiff's property to its former state, but does not remedy the injury sustained and involves no monetary gain to the insured parties." *Verlan, Ltd. v. John L. Armitage & Co.,* 695 F.Supp. 950, 953 (N.D.Ill.1988). In *Verlan,* the court concluded that cost recovery claims seek equitable relief, not damages, and, hence, are not covered by a CGL policy.

The Eighth Circuit en banc has addressed this precise issue in a number of recent opinions. In *Continental Insurance Companies v. Northeastern Pharmaceutical & Chemical Company, Inc.,* 842 F.2d 977 (8th Cir.1988), the Northeastern Pharmaceutical & Chemical Company ("NEPACCO") was insured under three standard-form comprehensive general liability (CGL) policies issued by Continental Insurance Companies ("Continental"). Each policy stated that Continental would:

> "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies caused by an occurrence, and [Continental] shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage."

*Id.* at 979. As in the present case, the dispositive issue before the Court of Appeals in *NEPACCO* was "whether the term 'damages' in the standard-form CGL policy includes cleanup costs." *Id.* at 983.

In interpreting the insurance policies, the *Continental* court turned to Missouri's rules of construction:

"[t]he rules of construction applicable to insurance contracts require that the language used be given its plain meaning. If the language is unambiguous the policy must be enforced according to such language. If the language is ambiguous it will be construed against the insurer. Language is ambiguous if it is reasonably open to different constructions; and language will be viewed in light of 'the meaning that would ordinarily be understood by the lay[person] who bought and paid for the policy.'"

*Id.* at 985 (quoting *Robin v. Blue Cross Hospital Service, Inc.,* 637 S.W.2d 695, 698 (Mo. 1982)). While the court in *NEPACCO* conceded that "[v]iewed outside the insurance context, the term 'damages' is ambiguous: it is reasonably open to different constructions," a majority of the court, nevertheless, concluded that "[i]n the insurance context, however, the term 'damages' is not ambiguous, and the plain meaning of the term 'damages' as used in the insurance context refers to legal damages and does not include equitable monetary relief." *Id.* at 985.

In support of this conclusion, the Court of Appeals in *NEPACCO* made the following observations: (1) "black letter" insurance law stood for the proposition that "damages" under a liability insurance contract did not include claims for equitable relief; (2) the limited definition of "damages" was consistent with Continental's obligation as a whole since the insurer "did not agree to pay 'all sums which the insured shall become legally obligated to pay,' but rather 'all sums which the insured shall become legally obligated to pay as damages;'" and (3) "[t]he limited construction of the term 'damages' is also consistent with the statutory scheme of CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4), which differentiates between cleanup costs and damages." *Id.* at 986.

In *Parker Solvents v. Royal Ins. Companies,* 950 F.2d 571 (8th Cir.1991), the issue was "whether [under Arkansas law] the phrase 'as damages' in the insuring clause of a standard form comprehensive general lia-bility insurance policy covers clean-up costs incurred pursuant to a consent decree between the insured and the U.S. Environmental Protection Agency." After referring to *NEPACCO* and concluding in *Parker Solvents* that "[t]he relevant policy language is the same, the applicable insurance law principles are the same, and there are no Arkansas cases on this specific subject that suggest a contrary result," the Court of Appeals affirmed the district court's decision that *NEPACCO* reflected the law of Arkansas as well as the law of Missouri. 950 F.2d at 572. See, also, *Federated Rural Electric Insurance Corp. v. Arkansas Electric Cooperatives, et al.,* 48 F.3d 294 (8th Cir.1995); *Grisham v. Commercial Union Insurance Co.,* 951 F.2d 872, 875 (8th Cir.1991) (Noting that "Arkansas case law embodies many of the same principles embraced by decisions of the Missouri courts that we reviewed in NEPACCO," the court concluded that the Supreme Court of Arkansas would agree with the *NEPACCO* decision).

The policies examined in *NEPACCO, Grisham,* and *Federated Rural Electric* contain substantially similar, if not the same, language used in the general liability insurance policies in the present action. UUIC's policies state:

INSURING AGREEMENT—WE will pay all sums the INSURED legally must pay as damages (including punitive damages where insurable by law) because of INJURY to which this Coverage Part applies, caused by an OCCURRENCE....

WE have the right and duty to defend any suit asking for these damages. WE may investigate and settle any claim or suit WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend.

WE have no right or duty to defend suits for damages not covered by this Coverage Part.

In *NEPACCO,* the relevant policies stated that the insurer would pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damages to which this insurance applies caused by an occurrence." *Id.* at 979; *Federated Rural Elec-*

*tric,* supra, at 295 (insurer obligated to "pay on behalf of [AECI] all sums which [AECI] shall become obligated to pay as damages"); *Grisham,* supra, at 874: "All of these policies included a provision in their insuring agreement to the effect that '[t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damages to which this insurance applies.'"

While the Supreme Court of the State of Nebraska has not addressed the issue whether an "as damages" clause in a general liability insurance policy covers response costs, Nebraska's Supreme Court does employ rules of construction which are similar to those applied by the court in *NEPACCO.* For example, the Nebraska Supreme Court stated in *Katskee v. Blue Cross Blue Shield,* 245 Neb. 808, 515 N.W.2d 645, 649 (1994):

An insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the policy.

When interpreting the plain meaning of the terms of an insurance policy, we have stated that the "'"natural and obvious meaning of the provisions in a policy is to be adopted in preference to a fanciful, curious, or hidden meaning"'".... We have further stated that "'[w]hile for the purposes of judicial decision dictionary definitions often are not controlling, they are at least persuasive that meanings which they do not embrace are not common.'"

(Citation omitted). See, also, *Union Ins. Co. v. Land and Sky, Inc.,* 247 Neb. 696, 529 N.W.2d 773, 776 (1995): "Whether a document is ambiguous is a question of law.... A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings."

In view of the decisions of the Eighth Circuit Court of Appeals in *NEPACCO, Federated Rural Electric* and *Grisham* which are decisions involving language identical or substantially similar to the language in UUIC's policies in the present action, the court finds and concludes that (1) the term "damages," as used in UUIC's two policies of liability insurance involved in UUIC's motion for summary judgment, does not include liability for "response costs" and (2) the preceding interpretation, excluding response costs from "damages," comports with the distinction CERCLA makes between damages and response costs. See 42 U.S.C. § 9607(a)(4)(A) (a party shall be liable for "all costs of removal or remedial action incurred by the United States Government") and § 9607(a)(4)(C) (a party shall be liable for "damages for injury to, destruction of, or loss of natural resources"). Also, in view of the similarity of the rules of construction used by courts in Nebraska, Missouri and Arkansas, this court concludes that, if presented with the issue of coverage relative to the "as damages" provision in the policies involved in this action, the Supreme Court of Nebraska would reach the same result which was reached by the majority of the Court of Appeals in *NEPACCO.*

Therefore, after a review of the record and all evidentiary materials submitted regarding UUIC's summary judgment motion, the court finds and concludes that there are no genuine issues of material fact and that, as a matter of law, UUIC is entitled to judgment: the phrase "as damages," used in policies for the period from July 1, 1981 to December 31, 1982, namely, UUIC's policy nos. 348624 E and 348624 F, does not include cleanup costs concerning an action brought under CERCLA. For that reason, the defendant, Universal Underwriters Insurance Company's motion for summary judgment (filing no. 16) will be sustained in part, that is, concerning policy nos. 348624 E and 348624 F. However, the court denies UUIC's summary judgment motion regarding its eight remaining policies, namely, policy nos. 348624 G to 348624 N because the periods covered by the eight remaining policies are not in issue as the result of Floyd's Sales' declaratory judgment

action and, hence, are not before the court. The partial denial of UUIC's summary judgment motion is without prejudice to any subsequent motion for a summary judgment relative to the remaining eight insurance policies designated in UUIC's summary judgment motion (filing no. 16), namely, policy nos. 348624 G to 348624 N.

THEREFORE, IT IS ORDERED:

1. That filing no. 16, the motion for summary judgment filed by the defendant, Universal Underwriters Insurance Company, is granted in part and denied in part;

2. That summary judgment is granted to the defendant, Universal Underwriters Insurance Company, and against the plaintiff, Floyd's Sales & Service, Inc., namely, the words "damage" and "damages," used in policies nos. 348624 E and 348624 F issued by the defendant to the plaintiff, do not include response costs regarding an action commenced under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq.;

3. That excepting policies nos. 348624 E and 348624 F for which summary judgment is granted to Universal Underwriters Insurance Company, the remainder of the summary judgment motion concerning policy nos. 348624 G to 348624 N is denied; and

4. That pursuant to Fed.R.Civ.P. 54(b), this decision is not a final and appealable order until after entry of judgment adjudicating all the claims and the rights of the parties.